**STATE**

v.

**Stanley HENSHAW.**

**No. 88–216–C.A.**

Supreme Court of Rhode Island.

April 25, 1989.

James E. O'Neil, Atty. Gen., Annie Goldberg, Asst. Atty. Gen., for plaintiff.

John A. MacFayden, III, Providence, for defendant.

## OPINION

MURRAY, Justice.

Stanley Henshaw III was charged with one count of obtaining money by false pretenses under G.L.1956 (1981 Reenactment) § 11–41–4. A Superior Court jury returned a verdict of guilty. The defendant now appeals his conviction.

Stanley Henshaw III was in the insurance business. He lived in an apartment at 200 Hope Street in Providence. Henshaw had an insurance policy with Fireman's Fund Insurance Companies (Fireman's) on a number of household items in the apartment, among them a silver Tiffany tray and a gold pocket watch. On February 25, 1984, he reported to the police that his apartment had been burglarized and that a number of items were missing, among them, the silver tray and the gold watch. He filed a claim with Fireman's and collected under his policy for the silver tray, gold watch, and other items. The total Henshaw received from the insurance company was $18,978.75. The portion of this amount that was attributable to the tray and the watch was $8,750.

In August of 1984, however, the Tiffany tray which Henshaw had reported stolen was still in his possession. He took the tray to Boston and there sold it to an antique dealer for $1,700. A sale of this type requires the antique dealer to furnish the seller's name and social security number to the police. The antique dealer knew Henshaw personally, and at the time of sale Henshaw freely gave his social security number. This information on the sale was forwarded to the police, who believed that it was possible that the tray sold by Henshaw was the same one he had reported stolen. The police took a statement from the antique dealer, called the insurance company, and called Henshaw to inform him of the suspicious circumstances.

At trial, Henshaw testified that he was mistaken in believing that the tray had been stolen. Henshaw explained that he was living at 200 Hope Street when the burglary occurred on February 25, 1984. On May 29, 1984, he moved from Hope Street to 26 Benefit Street. While moving, Henshaw found the silver tray and the gold watch. He testified that he must have simply misplaced these items, and was quite embarrassed by their discovery. Henshaw stated that he intended to repay the insurance company. He further testified that he did not make immediate repayment because he was short of money. He decided to wait for some commission

checks before he would repay the funds. Henshaw testified that the reason he took the tray to Boston to sell was to raise money to reimburse the insurance company. He further testified that he intended to put the $1,700 he received for the tray toward reimbursement. After the police called Henshaw, he called an insurance-company representative and explained that at the time of the burglary he sincerely believed the tray and the watch stolen. Henshaw said he would repay the company. Four days later, the insurance company received a letter from Henshaw with his personal check for $8,750. However, Fireman's returned the check, and advised Henshaw that reimbursement of the entire claim of $18,978.75 was sought because the insurance company now believed the claim to be fraudulent. However, Henshaw refused to pay back the total amount of the claim. Henshaw was charged by information, tried by a Superior Court jury, and found guilty.

Henshaw appeals on two grounds. First, he contests the denial of his motion for judgment of acquittal because no rational jury could have found him guilty on these facts. Second, he contends that the trial justice erred in denying his motion for a new trial. We find no error in the denial of these motions.

## I

 In a criminal case, a challenge to the sufficiency of the evidence is properly made by a motion for judgment of acquittal. *State v. Collazo,* 446 A.2d 1006, 1011 (R.I.1982); Super. R. Crim. P. 29. In reviewing a denial of a motion for judgment of acquittal, this court applies the same standard the trial justice applies in arriving at his or her ruling. *Id.* In deciding such a motion, a trial justice must view the evidence in the light most favorable to the state, without weighing the evidence or assessing the credibility of the witnesses and draw all reasonable inferences that are consistent with guilt. *State v. Caruolo,* 524 A.2d 575, 581 (R.I.1987). Unless the evidence viewed in such a light is insufficient to warrant a jury verdict of guilt

beyond a reasonable doubt, a motion for judgment of acquittal should be denied. *State v. Burke*, 522 A.2d 725, 734 (R.I. 1987). The denial of a motion for acquittal, made at the conclusion of the prosecution's case, is reviewable only if the defense rests after making the motion. *State v. Roddy*, 401 A.2d 23, 32 (R.I.1979); *State v. Grullon*, 117 R.I. 682, 689, 371 A.2d 265, 268 (1977). If the defense presents its case after making a motion for judgment of acquittal at the close of the state's case in chief, the denial of the motion is nonappealable. *Id.*

In the case at bar, two motions for judgment of acquittal were made. The first one was made at the close of the prosecution's case in chief. The trial justice reserved his decision on this motion and the defense then proceeded to present its case. Thus the defendant waived his right to appeal the subsequent denial of the first motion.

■ In regard to the second motion which was made at the close of the trial, the elements of obtaining property by false pretenses under § 11–41–4 are that the accused: "(1) obtain property from another designedly, by any false pretense or pretenses; and (2) with the intent to cheat or defraud." *State v. Markarian*, 551 A.2d 1178, 1180 (R.I.1988). We note that the first element of obtaining property by false pretenses could be satisfied by Henshaw's filing the proof of loss with the insurance company, receipt of the check as compensation for the allegedly stolen tray, and cashing the check. The second element could be satisfied by the inference that when Henshaw cashed the check from the insurance company, he knew he still had the tray. Henshaw himself testified that he filed the proof of loss which listed the tray as stolen, received the insurance company check, cashed it, and then later sold the tray in Boston without ever notifying the insurance company that the tray was not stolen. This testimony corroborated other evidence presented. The primary exculpatory evidence presented was Henshaw's testimony that he did not intend to defraud Fireman's. However, viewed in the light most favorable to the state, Henshaw's explanation and denial of intent to defraud could be completely disregarded by the jury. The trial justice correctly determined that the evidence presented was capable of generating proof of guilt beyond a reasonable doubt. We find no error in the denial of the second motion for judgment of acquittal.

The trial justice charged the jury, and both parties agreed, that Henshaw must have had knowledge that he was still in possession of the tray when he cashed the insurance company check. If it was after Henshaw cashed the check that he realized that he still had the tray, the obtaining-property-by-false-pretenses charge could not be sustained. Defense counsel asserts that Henshaw's intent to defraud could be reached only by impermissibly pyramiding inferences and therefore the rulings on the motions were erroneous. They maintain that a finding of intent to defraud with respect to negotiating the check can be derived solely from the inference that Henshaw intended to keep the money he received when he sold the tray, and not make reimbursment with such funds. However, it is our belief that it was not necessary to pyramid inferences in the manner described to infer reasonably that Henshaw had an intent to defraud. For instance, when Henshaw took the tray to Boston to sell without notifying the insurance company of his continued possession of it, one may infer from such conduct that Henshaw always had knowledge of his possession of the tray. We believe this is a direct inference, not a pyramided one.

## II

■ The standard for appellate review of a trial justice's ruling on a motion for a new trial is that such ruling is entitled to great weight and will be disturbed only if the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *Beauchemin v. Sweeten*, 471 A.2d 624, 626 (R.I.1984). In considering a motion for a new trial, the trial justice has a duty to exercise his or her independent judgment and to consider all the material

evidence in light of his or her charge to the jury. *Id.* The trial justice assumes the role of a super juror because of his or her more experienced judgment. *Connors v. Gasbarro*, 448 A.2d 756, 759 (R.I.1982). The trial justice must pass on the weight and credibility of the witnesses, and may accept or reject conflicting testimony and draw all reasonable inferences. *Beauchemin v. Sweeten*, 471 A.2d at 626. If in his or her independent assessment of the evidence, the trial justice determines that he or she would have reached a different result, and finds that the verdict is against the fair preponderance of the evidence and fails to do substantial justice, then the trial justice may grant a new trial. *Id.; Yammerino v. Cranston Tennis Club, Inc.*, 416 A.2d 698, 699–700 (R.I.1980). However, in those instances in which the trial justice determines that the evidence and reasonable inferences drawn therefrom are so nearly balanced that reasonable individuals could arrive at different results, the new-trial motion must be denied. *Connors v. Gasbarro*, 448 A.2d at 759. The trial justice need not analyze all the evidence presented, but should state the motivation for his or her ruling. *Yammerino*, 416 A.2d at 700. We now turn to the trial justice's application of this doctrine.

██ In the case at bar, when the trial justice considered the motion for a new trial, he assessed the evidence and indicated that he found Henshaw a credible witness. The trial justice then stated that he must consider his charge to the jury. He reviewed his instructions to the jury on the law, and stated in part:

"I * * * told them if they drew an inference which was consistent with guilt, and they also could draw an inference from certain evidence which was inconsistent with guilt, they should * * * give the defendant the benefit of the doubt."

The trial justice concluded that as a whole his charge was fair and did not prejudice the defendant. He stated that if he were trying the case without a jury, he would have found the defendant not guilty. The trial justice then stated that although he and the jury disagreed as to the correct result, he believed that reasonable minds could differ in interpreting the evidence. In regard to the motion for new trial, the trial justice stated:

"I have gone over the evidence. I have given it a lot of thought. I have gone over the testimony of the witnesses. I am satisfied that reasonable minds could ·differ."

The trial justice denied the motion for a new trial, explicitly basing his decision on the rationale that the result hinged upon believing or disbelieving Henshaw. As illustrated above, the trial justice carefully and correctly applied the standard for a new trial.

██ Defense counsel maintains that in regard to the motion for new trial, we should consider a lie-detector test that was given to Henshaw after the guilty verdict was returned. They offer the test as newly discovered evidence under Rule 33 of the Superior Court Rules of Criminal Procedure. However, a polygraph test administered after a defendant has been found guilty does not come within the definition of newly discovered evidence. We further note that we recently held that polygraph tests are not admissible at trial for any purpose. *State v. Dery*, 545 A.2d 1014, 1018 (R.I.1988).

The defendant's appeal is denied and dismissed. The judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.