STATE

v.

**Raymond CLARK.**

**No. 90–610–C.A.**

Supreme Court of Rhode Island.

Feb. 21, 1992.
As Corrected Feb. 28, 1992.

James E. O'Neil, Atty. Gen., Neil F.X. Kelly, Sp. Asst. Atty. Gen., and Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

Edward J. Romano, Providence, for defendant.

## OPINION

KELLEHER, Justice.

A Providence County grand jury returned an indictment charging the defendant, Raymond Clark, with sixteen counts of sexual assault and incest. The charges consisted of acts of sexual penetration with a person thirteen years or younger, cunnilingus, fellatio, and penetration by force and coercion on a person over thirteen years of age and under the age of sixteen.

A trial commenced on August 15, 1989, and a judgment of acquittal was granted on counts 3, 5, and 16 at the close of the state's case. At that time the state also withdrew counts 7 and 11. After the defense presented its case, the trial justice dismissed counts 9, 10, and 12. On August 18, 1989, the jury returned a guilty verdict on seven of the remaining eight counts of the indictment. The facts of the case insofar as pertinent to this appeal are as follows.

The victim in this case was defendant's daughter, to whom we shall hereafter refer by the fictitious name of Susan. Testimony at trial demonstrated that defendant was a domineering head of the household who became obsessed with controlling all aspects of family life. The testimony of Susan and her mother revealed that defendant beat all members of the family in addition to making them work long hours at his jewelry shop. When Susan reached the age of twelve, her parents would write school-absence-excuse notes so that she could work fourteen-hour days at the jewelry shop. Such a burdensome schedule left Susan virtually no time to engage in normal social activities that other youngsters her age enjoy. More unfortunately, defendant's reprehensible conduct would soon evolve into actions that can only be described as abominable.

Susan stated at trial that in June 1983, when she was twelve, her father sent the family to Rocky Point Amusement Park but insisted that she remain home with him. A short time after Susan's mother and siblings departed, her father directed her to go into his bedroom. There he began to pull her pants off and touch her breasts, to which overtures she responded, "No this is wrong, you're my father. I don't want to do this." At that point defendant ceased the activity and allowed Susan to leave the room. Susan testified that in the week following this encounter her father frequently became upset for no apparent reason and would punch and hit her and other family members. Susan explained that at this point she was in great fear of her father. Susan testified that

approximately one week after the first incident, her father again set upon her in a similar manner, and this time she succumbed out of fear to his most detestable desires.

Susan stated that after this incident the sexual assaults by her father began occurring approximately once per month. Susan further related that by the time she turned thirteen years of age, in June 1984, the assaults occurred "most of the time, every day, every other day, two or three times a day at no specific time; just whenever he had the chance." Susan asserted that these encounters occurred frequently from 1984 to 1987, when the two were alone in the jewelry shop or at home.

In early May 1987 Susan informed her high school guidance counselor that she was being forced to work long hours and was often hit by her father. On May 9, 1987, an investigator from the Department of Children and Their Families (DCF) visited the jewelry shop, accompanied by two Providence police officers. The DCF worker questioned all the children individually. When questioned by the DCF worker, Susan broke down and disclosed that she had been sexually abused for a number of years. The defendant was then ordered out of the home for ten days. Susan testified that during this time defendant telephoned her from the intake center and tried to persuade her to drop the charges against him. In late May 1987 the family was reunited for a brief time. However, Susan found that her father's conduct did not change, as she testified later that he sexually assaulted her again on May 23 and 24 of 1987. On the evening of May 24, 1987, in a desperate attempt to escape her home, Susan jumped from her second-story bedroom window, spraining her ankle, and sought refuge at a friend's home. There she informed her friend's mother of what had happened with her father during the previous two days. The next day the police and DCF were notified, and Susan was moved to a foster home.

Susan's mother testified at trial. She confirmed that defendant forced the entire family to work long hours and routinely beat them. She also stated that defendant always insisted that Susan alone accompany him on errands. Susan's mother also stated that she became suspicious about the time defendant and Susan were spending together. Susan's mother explained that on one occasion she questioned defendant regarding an incident in which he and Susan were alone in defendant's bed. In response to this inquiry, defendant beat his wife.

At the trial defendant explained that he made the children work long hours because he wanted to teach them a trade. He admitted that he possessed a bad temper and disciplined his wife and children by striking them with his hand. However, defendant insisted that he never had any sexual contact with Susan and also stated that for the most part he was never alone with her.

■ On appeal defendant, through counsel, argues that the trial justice erred when she denied his motion for a new trial. The defendant contends that the trial justice did not properly assess the evidence in ruling on the motion for a new trial. In *State v. Dame*, 560 A.2d 330, 332–33 (R.I.1989), this court stated that "a trial justice's ruling on a motion for a new trial is entitled to great weight and will be disturbed only when the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." *See also State v. Henshaw*, 557 A.2d 1204, 1207 (R.I.1989). The trial justice also must make an independent appraisal and evaluation of the material evidence in light of the charge to the jury. If the trial justice finds that the evidence adduced at trial is such that reasonable minds could differ regarding the conclusion of the controversy, the new-trial motion will be denied. However, if the trial justice finds that the state has failed to sustain its burden of proof, a new trial must be ordered. *State v. Edwards*, 122 R.I. 228, 236, 405 A.2d 1161, 1165 (1979); *see also State v. Dame*, 560 A.2d at 332–33; *State v. Henshaw*, 557 A.2d at 1207–08.

The defendant argues that the trial justice erred when she accepted Susan's testimony as credible. The defendant's counsel argues that "it boggles the imagination to

think that according to the testimony of [Susan], the accused engaged in sexual relations with his daughter upwards of six hundred (600) to twelve hundred (1200) times over a four year period without ever being detected." The defendant characterizes the testimony of Susan's mother as "equivocal" and points out that no other corroborating evidence supporting Susan's testimony existed. Defense counsel also stresses the fact that defendant vehemently denied ever sexually assaulting Susan and stated that except for a few occasions the two were never alone.

In response to this argument we note that it is a well-settled principle in this jurisdiction that corroboration is not necessary to prove sex crimes. This court has duly noted that "[t]he corroboration requirement poses a major hurdle to a legitimate conviction for a sex offense. Due to the nature of sex crimes, eyewitnesses are seldom available." *State v. Cabral,* 122 R.I. 623, 627–28, 410 A.2d 438, 441 (1980) (citing *Stapleman v. State,* 150 Neb. 460, 464, 34 N.W.2d 907, 910 (1948)). Furthermore under G.L. 1956 (1981 Reenactment) § 11–37–11, the General Assembly has specifically excluded corroboration as a necessary requirement to prove the crimes of which defendant has been convicted. In fact Susan's testimony was corroborated by the testimony of her mother, who confirmed that defendant and Susan were often alone and who discussed one particular incident in which she had suspected something was amiss and confronted defendant, only to be physically rebuked. As the trial justice noted, "[T]he testimony of [Susan's] mother * * * did have the potent significance in its confirmation of one of several events that Susan had spoken about." In addressing the corroboration issue, the trial justice also noted that "it is not surprising that there were no witnesses, or 'almost' witnesses to these events. Men of this nature or this depraved nature who have sexual relations with their children starting at age twelve are not known for logical or normal behavior."

In considering defendant's contention that the trial justice did not properly assess Susan's credibility, we believe it appropriate to note that the trial justice need only mention sufficient evidence to show that the appropriate standard was applied. *State v. Dame,* 560 A.2d at 333. In the instant case the trial justice carefully appraised and evaluated the demeanor and testimony of Susan, noting as follows:

"She had a very frank appearance before the Jury. * * * [T]here was nothing crafty or cunning about the way she testified. * * * As I say, [Susan] was eminently believable. She described what her life was like, even before she had turned 13. The sexual activities that were imposed upon her by the authoritarian head of this household, a man she feared; a man who when she first refused him, his first approach when she was 12, became angry, continued his tyrannical behavior with his family, struck them. She was aware if she continued to refuse his behavior, his abusive behavior toward the rest of the family would escalate."

The record indicates that the trial justice thoroughly assessed the credibility of Susan and, relying on her testimony, correctly found that this controversy should go to the jury because at the very least it fell within the reasonable-minds-could-differ category. Such being the case, we find defendant's argument that the trial justice erred in not granting his motion for a new trial to be wholly devoid of merit.

The second issue defendant raises on appeal is that the trial justice erred in denying his motion for a judgment of acquittal. In a criminal case a party may properly challenge the sufficiency of the evidence by a motion for judgment of acquittal pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure. *State v. Collazo,* 446 A.2d 1006, 1011 (R.I.1982). In ruling on such a motion the trial justice must view the evidence in the light most favorable to the state, without weighing the evidence or assessing the credibility of the witnesses, and draw all reasonable inferences that are consistent with guilt. *Id. See State v. Henshaw,* 557 A.2d at 1206. If the evidence viewed in such a light is

sufficient to warrant a jury verdict of guilty beyond a reasonable doubt, the motion would be properly denied. *Id.* at 1206–07.

██ The defendant moved for a judgment of acquittal on all counts of the indictment. The trial justice properly articulated the criteria employed in ruling on such a motion by stating, "The court knows it treats the motion without regard to the weight or the credibility of the witnesses, and it views the evidence in the light most favorable to the State." In reviewing Susan's testimony, the court found that sufficient facts did not exist to support counts 3 and 5 of the indictment, and accordingly a judgment of acquittal was granted for those counts along with count 16. The trial justice then recounted Susan's testimony and found that, viewing this evidence in a light most favorable to the state, there were sufficient facts to support several of the remaining counts. A thorough review of the record reveals that the trial justice applied the correct standard in ruling on the defendant's motion for acquittal and properly denied the motion with regard to several counts of the indictment.

For the reasons stated above, the defendant's appeal is denied and dismissed and the judgment of the Superior Court is affirmed.