STATE

v.

Carlton J. BLEAU.

No. 93–301–C.A.

Supreme Court of Rhode Island.

Oct. 28, 1994.

Jeffrey Pine, Atty. Gen., Jane McSoley, Asst. Atty. Gen., for plaintiff.

Michael R. Hagopian, Deveney & Hagopian, Cranston, for defendant.

## OPINION

MURRAY, Justice.

This case comes before us on appeal by the defendant, Carlton J. Bleau (Bleau), from his conviction of leaving the scene of an accident in violation of G.L.1956 (1982 Reenactment) § 31–26–1. Bleau raises the following arguments on appeal: (1) the trial justice erred in not allowing him to make an opening statement following the state's opening statement, (2) the trial justice erred in denying his motion for judgment of acquittal and motion for a new trial, and (3) the trial justice erred in denying his motion to pass after two jurors saw him in handcuffs during a court recess. We reject Bleau's arguments and affirm the Superior Court judgment of conviction. The facts of the case are as follows.

On the evening of January 10, 1988, Rebecca Dunn (Rebecca) was working alone at the Store 24 (the store) located on Broad Street in Central Falls. Her shift began at seven o'clock in the evening and ended at approximately two-thirty the following morning, on January 11, 1988.

After closing the store, Rebecca began walking to her boyfriend's house to leave a note on his automobile before she walked home. Rebecca crossed Broad Street and then continued down toward Clay Street. As she walked down the left side of the street, a man driving alone in a beige Nissan pick-up truck approached her and asked her if she wanted a ride; Rebecca declined. During this encounter Rebecca spoke to the driver for less than one minute. Rebecca described the man as having gray hair and wearing glasses; he also wore a cap and "some kind of * * * post jacket" which had a signature on one side. Rebecca next observed the truck drive to the end of the street and turn left. The man in the truck then came back down Clay Street behind Rebecca, glanced at her, and slowly drove by her.

Rebecca then walked down Clay Street, turned right at High Street, and proceeded onto Jackson Street. When she was on Jackson Street, she saw the man in the truck

on High Street. She hid behind a parked car for between five to ten minutes. She testified that she was scared.

Rebecca next proceeded to walk to her boyfriend's house. She left a note on the windshield of his car but did not knock on the door to his house because it was so late.

Rebecca then traveled down the left side of Jackson Street. She testified that she was walking in the street and not on the sidewalk. As she looked over her right shoulder, she saw the man in the truck drive by, turning the wheel to the truck in her direction. The truck was traveling approximately ten miles per hour. Rebecca testified that the left side of the truck hit her right hip, causing her to fall to the ground. The man in the truck did not stop, and Rebecca saw him make a left turn onto Roosevelt Street after pausing at a stop sign.

Rebecca could see the truck's license plate from her position on the ground, and she testified that the license plate number was Massachusetts 417375.

Rebecca then ran to her house located on Cross Street in Central Falls and the police were called. Thereafter, Patrolman Robert Teft (Patrolman Teft) arrived. Patrolman Teft transported her to Pawtucket Memorial Hospital where she was examined.

On January 15, 1988, Rebecca met with a detective at the Pawtucket police station and reviewed a group of five or six photographs. Rebecca recognized and identified Bleau from a photograph she selected from the group.

Subsequently, Rebecca saw Bleau in person at the Pawtucket police station and identified him as the man driving the truck. She also made an in-court identification of Bleau.

Robert Smith (Smith) testified that in January of 1988 Bleau was living in an apartment located downstairs in his house. Smith further testified that in 1988 he owned a beige Nissan pick-up truck bearing Massachusetts registration 417375. Bleau had both access to the truck and his own key. Smith was not driving the truck on January 11, 1988.

Bleau first contends that the trial justice erred in not allowing him to make an opening statement immediately following the state's opening statement, which omission denied him a basic right. Bleau avers that Rule 26.2 of the Superior Court Rules of Criminal Procedure does not give a trial judge discretion to deny a criminal defendant an opportunity to make an opening statement. The state avers that the trial justice correctly limited the scope and extent of defense counsel's opening statement to evidence that would be presented in its case in chief. The state further asserts that even if the trial justice did commit error in this respect, Bleau did not suffer sufficient prejudice to warrant the reversal of his conviction.

Rule 26.2 provides in essence that before any evidence is offered at trial, the prosecutor may make an opening statement. Thereafter, if the defense wishes to make an opening statement, it may do so after the prosecution's opening statement or before the beginning of presentation of evidence in support of the defense. Here, defense counsel indicated that he wished to make an opening statement immediately after the prosecutor's opening statement. However, defense counsel was uncertain whether he would present any evidence to the jury in his case in chief. Defense counsel indicated that in his statement the jury would be told to pay attention to inconsistencies in the witnesses' testimony. The trial justice denied defense counsel's request to make an opening statement immediately after the prosecutor's on the basis of his description of the statement.

In *State v. Brynes*, 433 A.2d 658, 664 (R.I. 1981), we rejected a similar argument to that being pursued by the defense. We stated that "[t]he proper function of an opening statement is to apprise the jury with reasonable succinctness what the issues are in the case that is about to be heard and what evidence the prosecution and the defense expect to produce at trial in support of their respective positions." *Id.* An opening statement is not an appropriate vehicle by which to "attempt to impeach or otherwise argue the merits of evidence that the opposing side has or will present." *Id.* (quoting *State v. Griffith*, 97 Idaho 52, 56, 539 P.2d 604, 608

(1975)). Here, as in *Brynes,* the trial justice did not order a complete ban on the defense counsel's opening statement but limited its scope to what would be presented in the defense's case in chief. We find no error in the reasoning supporting the trial justice's ruling.

■ Bleau next argues that the trial justice erred in denying his motion for judgment of acquittal and motion for a new trial. It is Bleau's contention that Rebecca's testimony was insufficient to support the jury's guilty verdict. Specifically, Bleau argues that the facts do not support the finding that Bleau had knowledge that the truck hit Rebecca. In the absence of knowledge, Bleau avers, there cannot be a conviction of leaving the scene of an accident pursuant to § 31–26–1. The state contends that there was sufficient evidence supporting the finding that Bleau committed the crime of leaving the scene of an accident.

■ In ruling on a motion for a judgment for acquittal, a trial justice "must view the evidence in the light most favorable to the state, without weighing the evidence or assessing the credibility of the witnesses, and draw all reasonable inferences that are consistent with guilt." *State v. Clark,* 603 A.2d 1094, 1097 (R.I.1992). This court, in reviewing a trial justice's denial of a motion for judgment of acquittal, applies the same standards in determining whether that decision was correct. *State v. Henshaw,* 557 A.2d 1204, 1206 (R.I. 1989). If that examination reveals sufficient evidence to warrant a jury verdict of guilt beyond a reasonable doubt, the trial court was proper in its denial of the motion. *Clark,* 603 A.2d at 1097–98.

The statute under which Bleau was charged is § 31–26–1, and it provides:

"(a) The driver of any vehicle knowingly involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of § 31–26–3. Every such stop shall be made without obstructing traffic more than is necessary.

"(b) Any person knowingly failing to stop or to comply with said requirements under such circumstances which result in injury to any person shall upon conviction be punished by a mandatory loss of license for at least one (1) year and not more than five (5) years and imprisonment for not more than five (5) years and/or fined up to five thousand dollars ($5,000).

"(c) Any person knowingly failing to stop or to comply with said requirements under such circumstances as result in death of any person shall upon conviction be punished by a mandatory loss of license of no less than five (5) years and not more than twenty (20) years and imprisonment for not more than five (5) years and/or fined up to ten thousand dollars ($10,000)."

We focus our analysis on Bleau's contention that there was insufficient evidence that he knew or reasonably should have known that he was involved in an accident.

Rebecca testified that Bleau drove by her several times. She further testified that when she was walking on the left-hand side of Jackson Street, she looked over her right shoulder and saw Bleau turn the steering wheel toward her. She testified that she was hit with the side of the truck and was knocked to the ground. She observed the truck drive away without stopping.

Taking all this into account, without weighing the credibility of the witnesses, we are of the opinion that the trial justice properly submitted this case to the jury. Viewing the evidence in the light most favorable to the state and drawing every reasonable inference consistent with guilt, we believe that a jury could find Bleau guilty of the charge of leaving the scene of an accident in violation of § 31–26–1.

■ We next consider Bleau's claim that the trial justice improperly denied his motion for a new trial. Bleau contends that because the evidence presented was insufficient to prove his guilt beyond a reasonable doubt the verdict was against the weight of the evidence. Bleau contends that the trial justice's statement that he would have trouble finding

Bleau guilty if he were sitting without a jury further buttresses his position that the evidence was insufficient to prove guilt beyond a reasonable doubt.

"A trial justice may grant the new-trial motion if, relying on his or her independent assessment of the weight and the credibility of the evidence, he or she determines that the verdict is against the preponderance of the evidence." *State v. Mercado,* 635 A.2d 260, 265 (R.I.1993). "If, however, a trial justice agrees with the verdict or determines that reasonable minds could fairly come to different conclusions, then the new-trial motion must be denied." *Id.*

In reviewing a trial justice's ruling on a motion for a new trial, we accord great weight to the trial justice's findings of fact and will disturb such findings only if the trial justice overlooked or misconceived the evidence or was otherwise clearly wrong. *Henshaw,* 557 A.2d at 1207.

As discussed above, we are of the opinion that there was sufficient evidence along with reasonable inferences flowing therefrom supporting a jury's finding of guilt beyond a reasonable doubt. Although the trial justice indicated that he would have trouble finding proof beyond a reasonable doubt that Bleau knew that he had come in contact with Rebecca, he denied Bleau's motion on the basis that reasonable minds could fairly come to a different conclusion and that he could not find the jury's verdict to be unsupported by the evidence. We conclude that the trial justice correctly applied the proper standard in ruling upon the motion for a new trial. He did not overlook or misconceive any material evidence, nor was he clearly wrong.

Bleau next contends that the trial justice erred in denying his motion to pass after two jurors saw him in handcuffs during a court recess. Bleau argues that this prejudiced the jury against him. We disagree.

A criminal defendant should have a choice in determining whether he or she desires the trial justice "to advise prospective jurors or jurors who have been selected to serve on a particular case that the defendant is in custody for the purpose of neutralizing any inference that might otherwise be formed." *State v. Fenner,* 503 A.2d 518, 522 (R.I.1986). If the defendant decides to forego such an instruction, he or she has an obligation to inform the trial justice, and the trial justice should forego the instruction. *Id.* However, the defendant is then precluded from asserting as error the fact that jurors may have seen him or her in custody. *Id.*

In this case the trial justice offered to give the jury an instruction that Bleau was in custody at the commencement of the trial, which offer was refused by defense counsel. After the trial justice was advised by Bleau that he was seen in handcuffs by two jurors, he immediately gave the jury a cautionary instruction. The foreman of the jury assured the court that their verdict would not be based on the fact that Bleau was in custody but would be based solely on what was presented in court.

In taking into account defense counsel's refusal of the trial justice's initial offer to give an instruction at the commencement of the trial and the subsequent cautionary instruction to the jury, we are of the opinion that the trial justice did not commit error in refusing to pass the case.

For the reasons stated, Bleau's appeal is denied and dismissed. The judgment of conviction is affirmed, and the papers of the case are remanded to the Superior Court.