STATE

v.

**Boleslaw GRABOWSKI.**

No. 95–176–C.A.

Supreme Court of Rhode Island.

March 20, 1996.

Aaron Weisman, Asst. Atty. General, Annie Goldberg, Asst. Atty. General, for Plaintiff.

William A. DiMitri, Jr., Eugene V. Mollicone, Providence, for Defendant.

## OPINION

MURRAY, Justice.

This case came before the Supreme Court on the appeal of Boleslaw Grabowski (defendant) from his tardy objection to the trial court's jury instructions and from the denial of his motion for judgment of acquittal. In June of 1993 a jury found the defendant guilty of possession of a sawed-off shotgun and of alteration of the identification marks upon that gun but acquitted him of first-degree murder and was deadlocked on the offenses of second-degree murder and manslaughter.[1] On October 17 to 20, 1994, the defendant was retried on the second-degree-murder and manslaughter charges. On October 20, 1994, a jury found the defendant guilty of second-degree murder. He has now filed the instant appeal. Before we consider

---

1. The defendant had previously appealed to this court with respect to his first trial. In *State v. Grabowski*, 644 A.2d 1282 (R.I.1994), we dismissed the defendant's first appeal and found, inter alia, that retrial of the defendant on the second-degree-murder charge is not violative of the prohibition against double jeopardy. *Id.* at 1287.

the defendant's assignments of error, we briefly set forth the factual and procedural background of this case.

On November 16, 1990, the Providence police reported the discovery of the slain body of Robert DeShaies (DeShaies) at 340 Broadway, Providence, Rhode Island. The cause of death was described as a carotid-artery-piercing gunshot wound to the neck.

The defendant was subsequently arrested and charged, inter alia, in the Family Court with the murder of DeShaies. The Family Court, upon the petition of the State of Rhode Island (state), waived its jurisdiction over defendant and referred defendant to the Superior Court to be tried as an adult. On September 13, 1991, defendant was indicted in the Superior Court, inter alia, for the murder of DeShaies, for possession of a sawed-off shotgun, and for alteration of the identification marks upon a firearm.

After defendant's first trial the jury acquitted him of first-degree murder but found him guilty of possessing, as well as altering the identification marks upon, a sawed-off shotgun. The jury deadlocked on the charges of second-degree murder and manslaughter. A retrial on the charges of second-degree murder and voluntary manslaughter was held October 17 to 20, 1994. After the close of the state's case, defendant moved for judgment of acquittal pursuant to Rule 29(a) of the Superior Court Rules of Criminal Procedure. In the morning session of October 19, 1994, the trial justice heard and denied the motion. In the afternoon session of that same date, after both sides had rested, defendant renewed his motion for judgment of acquittal. The trial justice again denied defendant's motion. The jury thereafter found defendant guilty of second-degree murder.

There are two issues on appeal. The first issue is whether defendant preserved a timely objection to the trial justice's jury instructions regarding the charge of second-degree murder and, if so, whether the jury instructions were erroneous. The second issue on appeal is whether the trial justice erred in denying defendant's motion for judgment of acquittal. As these issues are discussed, any additional facts as may be necessary will be provided.

■ The defendant's first issue on appeal concerns the trial justice's reinstructions to the jury regarding the charge of murder in the second degree. Following the close of trial, the trial justice instructed the jury that

"[i]n order to prove the charge or the crime of murder in the second degree, the State must prove beyond a reasonable doubt only that the defendant intentionally, unlawfully killed Robert DeShaies with malice aforethought."

Upon the jury's inquiry regarding the charge of second-degree murder, the trial justice repeated the following instructions to the jury:

"In order to prove the charge or the crime of murder in the second degree, the State must prove beyond a reasonable doubt only that the defendant intentionally, which means unlawfully, killed Robert DeShaies with malice aforethought." (Emphasis added.)

The defendant now argues that the underlined portion of the reinstructions was erroneous. The state, however, argues that defendant has waived this argument on appeal because he did not raise a timely objection to the allegedly erroneous jury instructions. Hence the threshold question to be resolved is whether defendant's assignment of error was adequately preserved in the trial court.

Rule 30 of the Superior Court Rules of Criminal Procedure provides in pertinent part,

"No party may assign as error any portion of the charge or omission therefrom unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection."

We have repeatedly stated that "we shall not consider on appeal asserted errors in the instructions of the trial justice unless timely objection is made in the trial court." *State v. Williams,* 432 A.2d 667, 669 (R.I.1981). *See also State v. Thomas,* 654 A.2d 327 (R.I. 1995); *State v. Medeiros,* 599 A.2d 723 (R.I. 1991); *State v. Parker,* 472 A.2d 1206 (R.I. 1984); *State v. Vargas,* 420 A.2d 809 (R.I.

1980). In *State v. Williams* we emphasized the following:

"During the course of the instructions counsel are expected to listen to the judge, noting whether their requests have been specifically fulfilled or covered by paraphrase in an adequate way, *see, e.g., State v. Sharbuno,* 120 R.I. 714, 390 A.2d 915, 920 (1978), and to determine whether any error of omission or commission has been made. No trial justice may be expected to be endowed with that quantum of total recall which would enable him or her at the conclusion of the charge to be certain that all necessary points have been covered accurately and completely. At this point it is incumbent upon trial counsel to point out to the judge specifically and clearly those areas in which corrections or further instructions may be needed. If counsel fulfills this function, slips of the tongue or other errors may be promptly corrected before the jury begins its deliberations." *Williams,* 432 A.2d at 670.

Here, the record clearly indicates that defendant did not object to the reinstructions until after the jury had rendered its verdict. Following the jury reinstruction, defendant's counsel did not mention any perceived variation in the repeated charge or make any claim of resulting prejudice. In fact, when the trial justice asked if there was anything to be placed on the record after he had reinstructed the jury, defendant's counsel answered, "No, your honor." It was not until the day after the verdict was rendered that defendant's counsel asked the court for leave "to put something on the record." The matter, however, was continued to the following Monday, October 24, 1994, to enable the prosecutor and defendant to be present.

The following Monday defendant's counsel argued that the trial justice had inserted "critical language" in the reinstructions which made the original instructions and the second set of instructions inconsistent and confusing to the jury. The trial court, however, found that defendant's counsel had been "listening" to the reinstructions and that "there was opportunity to object" but that defendant's counsel "didn't object, and [therefore] waived it." Hence the trial court

found that the objection to the reinstructions, which was raised after the jury had rendered its verdict, was "a little too late."

Under this record, we are persuaded that the trial court correctly found that defendant had waived the opportunity to present any arguments he may have had regarding the appropriateness of the jury instructions in question. It should be noted that although there are narrow exceptions to this "raise or waive" rule, the instant case does not fall within those exceptions. *See State v. Burke,* 522 A.2d 725, 731 (R.I.1987) (exception exists in certain limited circumstances for basic constitutional rights and novel rules of law). The defendant's appeal on this premise is without merit.

■ Even if we were to reach the merits of defendant's argument, we find that the trial justice's instructions, read in their entirety, are adequate and informative and are without error. The defendant maintains that "[t]he jury, as lay people, equated unlawfulness with the term 'intentional' [and] that the common meaning of intentional was eliminated in the minds of the jury." The defendant stressed that "[a]n action can be intentional yet not be unlawful." Therefore, defendant argues, "the trial justice misstated the law in that he redefined the word 'intentional'" to mean unlawful.

■ "A jury charge is required to cover the law adequately." *State v. Leuthavone,* 640 A.2d 515, 521 (R.I.1994). On appeal, "this court examines jury instructions in their entirety to determine the manner in which a jury of ordinary, intelligent lay persons would have comprehended them." *Id.* "To ascertain whether an instruction has fairly set forth for the jury the legal principles controlling a crucial factual issue, we must read the allegedly inadequate instructions in the context as a whole." *State v. Baker,* 417 A.2d 906, 910 (R.I.1980).

As stated previously, defendant argues that the trial justice "deviated from his first instruction" when he inserted the words "which means" in his reinstructions. Although defendant claims that insertion of these words prevented the jury "from considering a defense such as killing in self-de-

fense," that argument is unpersuasive when the trial court's instructions are read in their entirety. In both the original charge and the reinstructions to the jury, the statement at issue was followed immediately with an instruction defining "unlawful" as "without legal right or legal justification to commit the killing." Moreover, in his instructions to the jury the trial justice stated the following:

> "Accordingly, in order for the State in this case to be entitled to your verdict of guilty on the charge or accusation of second-degree murder, it must first prove to you beyond a reasonable doubt, the following three facts: First, that on November 16, 1990, in Providence, this defendant, intentionally, unlawfully, killed Robert DeShaies. Two: That he did so with malice aforethought, as I've defined that word for you. *And three: That at the time of the shooting, the defendant was not then acting in self defense.*" (Emphasis added.)

Clearly, the trial justice's instructions, read in their entirety, demonstrate that the jury was not precluded from considering the possibility that defendant may have acted in self-defense. We are of the opinion that the inclusion of the phrase "which means" in the reinstructions to the jury do not affect the propriety of the instructions as a whole. Therefore, we conclude that the trial justice did not commit any error in giving his reinstructions to the jury.

The defendant next challenges the trial justice's denial of his motions for a judgment of acquittal. In a criminal case "a party may properly challenge the sufficiency of the evidence by a motion for judgment of acquittal pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure." *State v. Clark,* 603 A.2d 1094, 1097 (R.I.1992). In ruling on a motion for judgment of acquittal, the trial justice "must view the evidence in the light most favorable to the state, without weighing the evidence or assessing the credibility of the witnesses, and draw all reasonable inferences that are consistent with guilt." *Id.* "If the evidence viewed in such a light is sufficient to warrant a jury verdict of guilty beyond a reasonable doubt, the motion would be properly denied." *Id.* at 1097–98. "In reviewing a denial of a motion for judg-

ment of acquittal, this court applies the same standard the trial justice applies in arriving at his or her ruling." *State v. Henshaw,* 557 A.2d 1204, 1206 (R.I.1989). *See also State v. Tempest,* 651 A.2d 1198 (R.I.1995).

Here defendant refers to the testimony of three of the state's witnesses, Gina Imoldi (Imoldi), Michele Marsh (Marsh), and Everett Studley (Studley), to support his argument that "at no point did the State prove the elements in the [charge of murder in the] second degree." However, upon viewing the testimony of the aforementioned witnesses in the light most favorable to the state, we are of the opinion that the trial justice properly denied the motion for judgment of acquittal.

The first witness, Imoldi, testified that defendant telephoned her immediately after the shooting of the victim and said, "Gina, I'm in trouble. * * * It just happened. The gun went off, and I left. * * * I shot someone. * * * You have to come and pick me up, and you have to get me out of here." Imoldi also testified that defendant wanted to turn himself over to the police.

Another witness, Marsh, testified that while she was talking to defendant over the telephone, she heard defendant say to someone, "Come up to the third floor," or "I'm up on the third floor." Marsh then testified that defendant and another individual were involved in a dispute over a leather jacket. She heard the unidentified individual say that the leather jacket was all ripped, that he wanted money for the jacket, and that "his mother was pissed." In response, defendant told the individual to come back at six o'clock. The individual did not want to return at six o'clock because he "didn't like coming down in that neighborhood at night." He also refused defendant's offer to reimburse him by "giv[ing] him [defendant's] keys to the motorcycle." Instead, the individual suggested that he "go up [to defendant's] room and find something worth the jacket." Marsh testified that defendant did not want that individual to go up to his room and that she heard defendant say, "Get out of here. I don't want to have to do this." Marsh then heard two loud noises, at which time defendant "got back on the phone with [Marsh] and said he had to go."

The third witness, Studley, an employee of a funeral home, was working in an embalming room located on the first floor of defendant's apartment building on the morning of the incident. Studley testified that he heard a knock on a door in the hallway of the building and a voice say, "What are you doing here?" He heard someone say, "Who was going to pay for the hole?" to which defendant responded, "I don't know." Studley then heard someone say more than once, "Leave now, or get out of here." He then heard someone say "No," in a pleading voice. At the same time that he heard the pleading voice, Studley heard a loud noise that sounded like "someone threw an M–80 firecracker."

The body of the victim, DeShaies, was found in the hallway of defendant's apartment building. A Winchester 12 gauge semiautomatic shotgun was found leaning against a railing. The shotgun was loaded with one live round of ammunition in its chamber and another in the magazine, with the safety lock disengaged. A spent shotgun-shell casing was found next to the body; other shells were found in a night-table drawer standing two-thirds open in defendant's third-floor apartment.

In addressing defendant's motions for judgment of acquittal, the record clearly indicates that the trial justice properly reviewed the aforementioned evidence and determined that the evidence was capable of generating proof of guilt beyond a reasonable doubt. In response to defendant's first motion, the trial justice found that the victim had entered defendant's apartment building and that "a jury could reasonably conclude that there was an argument going on either in the hallway or in the stairway." The trial justice also found that

"[t]he fellow came and said, 'Who's going to pay for the hole?' He wanted the money, and he said, 'Come back at six o'clock' * * *. And the other fellow said, 'No,' he didn't want to come in that neighborhood at night.

"Then, as I recall it, there was the statement by the defendant, 'Well, here, take the keys to the motorcycle. I don't want

the keys. You have another set, and what good are they,' and things of that nature."

The trial justice then noted that defendant was heard to say, "Get out of here" followed by someone saying, "No," in a pleading manner. The trial justice suggested that "the only inference [from these statements] that's logical" is "that it was the victim here, who is now observing the gun, and was pleading that he not be shot." The trial justice also indicated that defendant's statement "Get out of here. I don't want to do it" was "crucial [b]ecause [defendant] knows what he's doing. He knows the danger. He knows the probabilities and the possibilities. He knows what can result. And he's warning the victim." The trial justice thereafter concluded that "based upon all of the evidence here that I've referred to, and taking into account what I've indicated the Court's obligation is on such a motion, the defendant's motion for judgment of acquittal with regard to the charge of second-degree murder, is denied."

In response to defendant's second motion for judgment of acquittal, the trial justice found that the testimony of the medical examiner "and the testimony from the various witnesses, including the defendant, all point * * * to the fact that [defendant was] the one who utilized the shotgun that took the life of the victim, Robert DeShaies." The trial justice thereafter concluded that

"[t]he Court is satisfied that should the jury view the evidence in the light most favorable to the State, as must the Court, that it can certainly draw a reasonable inference that there was adequate intention, as well as adequate implied malice here on the part of the defendant, to warrant the return of a verdict of guilty beyond a reasonable doubt on the second-degree-murder charge."

Clearly, the trial justice's denial of defendant's motions for judgment of acquittal was based on an extensive review of the evidence presented at trial. Reviewing the evidence in the light most favorable to the state, we find no error in the denial of the motions for judgment of acquittal. Hence, defendant's second assignment of error is without merit.

The defendant nevertheless argues that the trial justice erred in "equat[ing] [a] dead-

ly weapon, to wit, the shotgun with evidence of malice in violation of the mandate of *Yates v. Evatt.*" In *Yates v. Evatt*, 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991), the United States Supreme Court found, inter alia, that the state trial justice erred in instructing the jury that malice is implied or presumed from the use of a deadly weapon. *Id.* at 401–02, 111 S.Ct. at 1892, 114 L.Ed.2d at 447. The United States Supreme Court reasoned that such a presumption impermissibly shifted the burden of proof of malice from the prosecution to the defendant and that the erroneous instructions may not be excused as harmless error. *Id.* at 411, 111 S.Ct. at 1897, 114 L.Ed.2d at 453.

Here defendant's reliance on *Yates* is misplaced. A review of the record before us indicates that the trial justice did not state that malice may be presumed from the use of a deadly weapon. Rather he indicated that "malice may be implied from the nature and the conduct of the situation." He specifically stated that "legal malice may be shown from the acts, and from the conduct, and from the manner of death." Although the trial justice noted that a shotgun was involved, he also stated that the shotgun "was fired at close range" and that "[i]t would appear that when one has a shotgun in one's hand, and one is pointing that shotgun at someone else, that that is certainly conduct that is so reckless, that it certainly can indicate a malicious intention on the part of the defendant." Moreover, the trial justice found it significant that defendant was heard to say, "Get out of here. I don't want to do it." The trial justice noted that the statement indicated defendant's knowledge of what he was doing and the danger that was involved. He further noted that "[i]f it was something that was just spur of the moment, you'd have something, but when he's aware of everything and then nonetheless, goes ahead and does it, I think that's sufficient to warrant the inference that there was malice; that malice may be implied from the conduct and from the actions of the defendant." *See In re Vincent*, 122 R.I. 848, 853, 413 A.2d 78, 81 (1980) ("statutory inferences or presumptions [are] permissive rather than mandatory [and] [t]he trier of fact, judge or jury, is free to accept or reject the inference in each case").

The trial justice clearly did not state that malice can be presumed from the use of the shotgun alone. We are therefore of the opinion that the defendant's final argument is without merit.

For the foregoing reasons the defendant's appeal is denied. The judgment of the Superior Court is affirmed, and the papers of this case are remanded to the Superior Court.

BOURCIER, J., not participating.