STATE

v.

**Raul L. ANDRADES.**

No. 98–286–C.A.

Supreme Court of Rhode Island.

Jan. 12, 1999.

Andrea J. Mendes, Aaron L. Weisman, Providence, for plaintiff.

Paula Lynch Hardiman, Providence, for defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

**PER CURIAM.**

The defendant, Raul L. Andrades, appeals from his conviction for robbery. Having learned the hard way that a free lunch is as illusory at midnight as it is at noon, the defendant challenges the denial of his motion for judgment of acquittal and the trial justice's restriction of his attorney's questioning during the robbery victim's cross-examination. We ordered the parties to show cause why we should not decide this appeal summarily. None having been shown, we proceed to affirm the judgment of conviction.

On April 17, 1995, the robbery victim was working for a Domino's Pizza outlet (Domino's) in Providence when he received a call at approximately 11:45 p.m. to deliver pizza to 257 Carpenter Street. Upon arriving at that location, the victim observed little more than an apparent vacant parking lot. He then beeped his horn and waited a minute or so before returning to the store. Shortly after the victim's return, the telephone rang again and an angry male with a Spanish accent told him to bring the pizza to 257 Carpenter Street. After the victim explained that he had just returned from there and that it was a vacant lot, the caller corrected the address and told him to bring the pizza to 256 Carpenter Street. Nonetheless, the caller stated that he wanted a discount on the pizza he had ordered because it was taking longer than 30 minutes for the delivery. The victim explained to the caller, however, that he was not entitled to a discount because the caller initially had given him the wrong address.

When the victim arrived at 256 Carpenter Street, he beeped the horn. After no one in the house responded, he left his car and knocked at the door. Again, no one answered, so he turned around to head for his car. At that point, a male opened the door. At trial, the victim identified this individual as defendant. He was wearing an army jacket and told the victim that he would be right back. When defendant returned to the door, he was carrying a "little gun [with] *** a brown handle and a black pitch." Pointing the gun at the victim, defendant said, "[g]ive me what you got." The victim complied and gave defendant the pizza and approximately

$20 to $23. The defendant also held a mask in his hand the entire time. The defendant then walked the victim across the street with the gun pointed towards his back until the victim got into his car and drove away. But instead of leaving the area, the victim circled the block and observed defendant reenter the house at 256 Carpenter Street. Thereafter, when he returned to Domino's, the victim called the police.

Within five to ten minutes, two policemen accompanied the victim back to 256 Carpenter Street where he positively identified defendant as the person who had robbed him. One of the officers observed that defendant was wearing a green army jacket when he answered the door. The police officers placed defendant in custody, putting him into their police cruiser. The police then searched defendant's residence. In his bedroom, they found the toy gun (it closely resembled a real pistol) that defendant had brandished when he robbed the victim. Although the police could not find the mask or the money, they did locate a pizza box under a couch with one pizza slice missing. At the close of the state's evidence, defendant moved for judgment of acquittal. The trial justice denied defendant's motion and entered judgment on the jury's guilty verdict.

On appeal, defendant argues that the trial justice should have granted his motion for judgment of acquittal and should have allowed him to question the victim about Domino's policy regarding free pizza deliveries. The defendant contends that the state failed to present any evidence that he demanded any money from the victim, and he claims that he was entitled to a free pizza because it took so long to arrive. Furthermore, he argues that the evidence did not show that he took any money from the victim. Finally, he asserts that the victim's testimony about the mask being in his hand belies any contention that defendant intended to rob him. We conclude that defendant's arguments lack merit.

In *State v. LaRoche*, 683 A.2d 989 (R.I.1996), we described the appropriate standard of review with respect to a motion for a judgment of acquittal in a criminal case tried to a jury:

"We have held that a trial justice, when presented with a motion for judgment of acquittal, 'must determine whether the evidence offered by the state is capable of generating proof of guilt beyond a reasonable doubt.' *State v. Harnois*, 638 A.2d 532, 536 (R.I.1994) (quoting *State v. Caruolo*, 524 A.2d 575, 580–81 (R.I.1987)). In making that determination, the trial justice is confined in his analysis of the state's evidence to view the trial evidence in the light most favorable to the state, without weighing or evaluating the evidence, or assessing the credibility of the trial witnesses. *State v. Clark*, 603 A.2d 1094, 1097 (R.I.1992). He or she must draw all reasonable inferences from the evidence that are consistent with the defendant's guilt and in favor of the state when passing upon the motion. In addition, the trial justice is required to view only that evidence that the prosecution claims is capable of supporting proof of guilt beyond a reasonable doubt. *State v. Wilshire*, 509 A.2d 444, 452 (R.I.1986), *cert. denied*, 479 U.S. 1037, 107 S.Ct. 891, 93 L.Ed.2d 843 (1987). If the evidence, when viewed in such a light, is sufficient to warrant a guilty finding by the jury, the trial justice must deny the motion. *See State v. Mattatall*, 603 A.2d 1098, 1105 (R.I.1992); *Clark*, 603 A.2d at 1097–98. This Court applies the same standard on appellate review as that utilized by the trial justice. *State v. Mollicone*, 654 A.2d 311, 319 (R.I.1995); *State v. Henshaw*, 557 A.2d 1204, 1206 (R.I.1989); *State v. McGranahan*, 415 A.2d 1298, 1301 (R.I.1980)." *LaRoche*, 683 A.2d at 995.

Here, the trial justice appropriately analyzed the evidence presented. He found that the victim observed defendant pointing an object at him that appeared to be a real gun, and that as a result, the victim became fearful and gave defendant all the money in his pocket per defendant's demand. Based upon this evidence, the trial justice determined that a jury could find defendant guilty. We concur and hold that the trial justice did not err in denying defendant's motion for judgment of acquittal.

 Next, the defendant argues that the trial justice erred in refusing to allow him to ask the victim about Domino's pizza-delivery policy. The defendant suggests that this restriction "severely crippled" his defense. However, the trial transcript indicates that the trial justice allowed defense counsel considerable latitude in questioning the victim concerning Domino's free-delivery policy.

"Q And you began the discussion with him regarding a discount?

"A That's right.

"Q What exactly is this discount?

"A Well, at times—at times the company can give $2 or $3 off when the pizza is late 20 minutes or half an hour, you know.

"Q Well, wasn't it the policy at one point in those days if you're more than 30 minutes late you get a free pizza?

"A Well, not all cases.

"Q But wasn't that the advertised promotion by the pizza people that if not delivered within 30 days—30 minutes free?

"MR. LIVINGSTON: Objection.

"THE COURT: Sustained.

"Q There were discounts and considerations in those days relative to the timing of the delivery, were there not?

"A Well, I'm just the driver. I do what I'm told to do.

"Q Sir, you were familiar with the discount at that time, were you not?

"Q For being late?

"A Yes.

"Q I mean, there were some discounts, were there not?

"A Yes.

"Q And the very first time he called, which would be his second that you spoke to him, he was talking about a discount on 'the pizza, wasn't he?

"A The first time or the—

"Q The second time he called, which would have been your first communication with him, he was talking about a discount?

"A He said he wanted a discount. I said the order was for 257 and 257 was a vacant lot so, therefore, we cannot give him the discount."

Based upon the above excerpt from the victim's testimony and our review of the remaining record, we conclude that the trial justice granted the defendant ample opportunity to question the victim and to educate the jury regarding Domino's pizza-delivery promotion. In any event, we are not convinced that the defendant suffered any prejudice as a result of the trial justice's rulings in this regard.

For these reasons, we deny the defendant's appeal and affirm the judgment of conviction.