STATE *vs.* WILLIAM H. CONSIDINE.

AUGUST 18, 1936.

PRESENT: Flynn, C. J., Capotosto, Baker, and Condon, JJ.

FLYNN, C. J.   This is an indictment which charges the defendant with obtaining by false pretenses $20,000 from the American Guaranty Corporation of Providence.   After a trial and a verdict of guilty in the superior court, the defendant filed his motion for a new trial upon the ground that the verdict was against the law and the evidence. This motion was denied by the trial justice in a rescript which, after reviewing the evidence, holds that, in his opinion, the jury was fully warranted in finding the defendant guilty.   The case is before us only on the defendant's exception to the denial of his motion for a new trial.

The testimony shows that the defendant, who was engaged in the jewelry business in Providence, consulted one Domenic J. Perri, treasurer and general manager of the American Guaranty Corporation, for the purpose of having that company discount some of the installment notes which the defendant took in the course of his business.   Perri subsequently advised the defendant that his company would extend him credit up to $15,000 if the conditional sale agreements for the jewelry that the defendant sold his customers were assigned with the notes to which they belonged and which the company accepted for discount.

The defendant agreed to this arrangement and the parties began to do business with each other on this basis.

Between July 20 and November 16, 1931, the defendant received substantially $17,961 from the company on the strength of six notes, accompanied by corresponding purported sale agreements of jewelry. Almost all of this sum remained unpaid when the defendant disappeared. Before discounting each of the above notes, the company investigated the credit ratings of the respective makers, but it did not inquire of them whether they had actually received the jewelry which was described as delivered in the conditional sale agreements. When certain payments called for by these notes and conditional sale agreements fell due and became in arrears, the company looked for the defendant, but he could not be found. It then began to investigate more closely and, for the first time, learned that the notes and the conditional sale agreements, which it had discounted and held, had been signed in each case by the maker at the request of the defendant and solely for his accommodation. The testimony also shows that they were induced by the defendant under one pretense or another, to sign these notes and the conditional sale agreements, that they knew nothing about his fraudulent purpose and scheme, and that they received no jewelry whatever from him. The evidence also indicates a further check to the defendant in the sum of $4,150 and the note and conditional sale agreement relating thereto. All of the above makers, except the latter, appeared and testified.

A warrant for the defendant's arrest was obtained but could not be served because he had fled the jurisdiction. In the summer of 1932, however, a sergeant of detectives in the Providence police department, while on vacation in the city of New York, saw the defendant at the Statue of Liberty. He immediately communicated with the New York police, who, in cooperation with the sergeant, placed him under arrest when the ferryboat reached the city dock. It appeared then that defendant had adopted, and registered

in New York under, an assumed name. He was then brought to Providence, indicted, tried and convicted of obtaining money by false pretenses.

In his brief and in the oral argument before us, the defendant contends that the jury was not warranted in convicting him on the evidence, and that the trial justice committed reversible error when he refused to grant the defendant's motion for a new trial. The principal argument advanced in support of his contention is that the company, having received genuine notes from the defendant, was not deceived by any representations contained in the sale agreements, since its failure to investigate their genuineness showed that it did not rely upon those representations when the notes were discounted. This argument, while ingenious, is unsound. The failure of the company to investigate the genuineness of the representations in the sale agreements indicates rather how much it relied upon the good faith and representations of the defendant and of those agreements. Each transaction between these parties included not only a note but a related conditional sale agreement, both of which, when offered for discount, were known by the defendant to represent to the company the component parts of a *bona fide* sale, which it naturally supposed was made by the defendant in the regular course of his business. In the conduct of its affairs, the company might deem it advisable to investigate the financial standing of the persons whose names appeared on both instruments, and yet consider it impractical or improper, from a business point of view, to ask those same individuals whether the transactions represented by the notes and conditional sale agreements were real, thereby impugning the honesty of both buyer and seller, which it had no reason to doubt at that time.

In the absence of known facts or suspicious circumstances, which are sufficient to put a reasonably prudent person on inquiry, a person may assume that honesty rather than fraud or deception controls in such business transactions.

Under such circumstances a person has a right to rely upon material representations expressly made or reasonably and necessarily implied. We think the evidence fairly shows that the defendant made his false representations to the company, knowing and intending that it would rely on the apparent genuineness of the notes and conditional sale agreements, as upon his representations and supposed good faith; and that he thereby obtained money from the company which it would not have parted with, except in consideration of said notes and conditional sale agreements and in reliance upon the representations of the defendant and of the conditional sale agreements, which latter the defendant knew were not legitimate sale agreements at all.

The defendant also urges that "the security behind the discounted notes was not misrepresented." He supports this assertion by first stating that "the willingness of the maker to pay is the essential element of value in a negotiable instrument" and is the real security behind a note, and concludes his argument on this point by saying: "But in this case there has been no evidence that the Guaranty Corporation has been finally unable to collect. It does not appear that legal action has been brought against the makers of the notes. . . . The fault or reason for delay falls squarely upon the shoulders of the Guaranty Corporation." We do not feel that the defendant derives any benefit from such an argument. In making this claim, he overlooks an all-important consideration: namely, that the company made it clear to the defendant, at the very beginning of their business relations, that it would discount no notes for him *unless the conditional sale agreements in connection with those notes were assigned to it when such notes were discounted.* The company was entitled in these transactions, not only to the willingness of the makers of the notes to pay them, but also to the security of the conditional sale agreements and of the property therein described.

The defendant also contends that there was no sufficient proof of any specific intent to defraud. This contention is

premised, as is the defendant's entire basic argument, upon the fundamental fallacy of assuming that only the notes were involved or to be considered. The testimony shows very clearly that the respective notes and the conditional sale agreements were joined together in the transactions as conditions precedent thereto, and therefore they also are inseparable in the consideration of the instant case.

Each of the purported conditional sale agreements was indorsed to the American Guaranty Corporation as follows: "For value received, undersigned does hereby sell, assign and transfer to American Guaranty Corporation, Providence, R. I., its right, title and interest in and to the contract on the reverse side hereof and the property referred to therein. William H. Considine & Co., Inc. By Wm. H. Considine, Pres."

The defendant in his brief admits that no jewelry had been delivered to the makers of the notes and agreements. The undisputed testimony of the accommodation makers of the notes and conditional sale agreements shows conclusively that no jewelry was sold or delivered by the defendant, or intended to be sold or delivered by him. Yet the defendant, knowing that the company would not part with its money except upon the security of the notes and conditional sale agreements, induced innocent third parties, by one misleading pretense or another, to execute the notes and conditional sale agreements in question, solely for his own accommodation. He then offered these notes and agreements to the company as genuine and he purported to assign his right and title to the property therein described as conditionally sold and delivered, when he knew at all times that the purported conditional sale agreements were spurious, and that he was assigning apparent title to jewelry which he never owned or sold or delivered, and which, in contemplation of this case, had no existence at all.

In such circumstances we think that his ultimate hope of paying back the notes before his deception might have been discovered would not exclude the jury from finding, if they

believed the evidence, that the defendant specifically intended to defraud the company of the security to which it was entitled on the defendant's own representations; that he intentionally pawned off upon the company conditional sale agreements which the company relied upon as *bona fide* and which the defendant knew were not genuine.

The defendant further contends that his conviction should not be sustained because the company was guilty of such gross negligence as totally to nullify its claim of reliance upon the representations in the conditional sale agreements. While this is the premise in his argument, he concludes by saying: "In brief, the gross negligence was not essentially gross negligence. It was really a natural course of conduct in regard to an unimportant thing. It was a manifestation that no reliance had been placed upon the representations in the leases." Thus he admits that there was no gross negligence on the part of the company. True, as suggested, it was "a natural course of conduct" but, in our opinion based upon the evidence in this case, it was not "conduct in regard to an unimportant thing." Without the conditional sale agreements, the defendant could not have obtained money from the company no matter what he otherwise offered or represented, and he knew it. How then can it be said that the company, which demanded the security of the conditional sale agreements as a condition precedent to its loan, placed no reliance upon the obvious and apparently genuine representations of those agreements? This argument would seem to emphasize the studied effort of the defendant to eliminate, if possible, any consideration of the conditional sale agreements which constituted such an important link in the chain of evidence that led to his conviction by a jury and to the approval by the trial justice of the jury's verdict of guilty.

The other contentions of the defendant in substance hinge upon the same fallacy by which he seeks to separate elements of the original transactions which essentially were joined together, and to remove from the case all proper

considerations of the conditional sale agreements which, he admits, contained such false representations. Together with the other points, above treated, they raise questions of fact to be determined upon the evidence by the jury. The jury had the opportunity of seeing and hearing the defendant and all the witnesses and apparently did not believe the evidence of the defendant, and rendered a verdict of guilty. The transcript of evidence in this case discloses ample evidence to support the verdict of the jury, which has been approved by the trial justice.

We cannot say, from our review of all the evidence, that the trial justice was clearly wrong in denying the defendant's motion for a new trial. Nor is any sufficient reason presented to warrant us in granting a new trial.

The defendant's exception, therefore, is overruled, and the case is remitted to the superior court for further proceedings.

*John P. Hartigan, Attorney General, Michael De Ciantis, Fourth Asst. Attorney General*, for State.

*James H. Kiernan, James A. McGuirk*, for defendant.