STATE

v.

David LaROCHE.

No. 93–259–CA.

Supreme Court of Rhode Island.

Sept. 10, 1996.

Lauren Sandler Zurier, Asst. Attorney General, Aaron Weisman, Asst. Attorney General, for Plaintiff.

Robert B. Mann, Providence, for Defendant.

## OPINION

BOURCIER, Justice.

The defendant, David LaRoche (LaRoche), appeals from his judgment of conviction on two counts of obtaining money by false pretenses [1] and three counts of conspiracy to obtain money by false pretenses.[2] He had been charged by indictment with having defrauded two Rhode Island credit unions by using other parties as frontmen to take out loans in their names from the credit union institutions from which LaRoche had previously borrowed funds and had all but exhausted his personal borrowing limits. The

---

1. General Laws 1956 §§ 11–41–4 and 11–41–5.

2. General Laws 1956 § 11–1–6.

indictment conspiracy counts were based on LaRoche's agreements with the various other parties, some of whom were credit union employees, to secure the loans without apprising the lending institutions' loan committees that their credit union lending limits were being surreptitiously circumvented and that it was LaRoche who lurked in the background as the actual beneficiary of the loans. On July 6, 1993, a Washington County jury convicted LaRoche on five of the counts with which he was charged,[3] two being the false pretenses counts and the other three being the conspiracy counts. The trial justice sentenced LaRoche to concurrent five-year terms of incarceration at the Adult Correctional Institutions on counts 1 and 5, the false pretenses counts, and imposed fines of $5,000 on each of those counts. On counts 2, 6, and 7, the defendant was sentenced to consecutive five-year terms of incarceration, those being the conspiracy counts. The conspiracy count sentences were suspended, and LaRoche was placed on probation for a period of five years, to run consecutive to the sentences imposed on counts 1 and 5. In addition, on counts 2, 6, and 7, fines of $5,000 were imposed on each. LaRoche was also ordered to make restitution for the moneys acquired by him by virtue of the false pretenses.

In this appeal, LaRoche claims that the trial justice erred in several respects, including, (1) his denial of the defendant's motion for judgment of acquittal; (2) his refusal to give certain instructions to the jury; (3) his denial of the defendant's motion to sever the counts against him and hold separate trials; (4) his refusal to pass the case because of the prosecutor's closing argument; and (5) his rulings regarding the state's proposed lending institutions expert. We will take up, in order, each of LaRoche's contentions of error after summary dissertation of the pertinent facts of the case. Additional facts will be added as they become germane to our opinion.

## I

### Case Travel and Facts

The machinations and motivations of defendant LaRoche that comprise the subject matter of the charges lodged against him in this case have been characterized by appellate counsel with such disparate spins that the most eloquent and successful of political campaign election year strategists would be both awed and envious. Depending upon which appellate brief is read, the state's or LaRoche's, the defendant emerges garbed in the cloak of a conniving, financially overextended businessman who illegally and fraudulently deceived lending institutions into parting with their money—or—as simply a savvy entrepreneur who ingeniously and legally wended his way around credit union lending limit rules and regulations with a little help from his credit union and noncredit union friends.[4]

The indictment charged LaRoche with alleged criminal false pretense and conspiracy activities that took place between June and December 1988. The state contended that LaRoche fell prey during that period, like so many others, to the devastating financial upheavals created by the October 1987 stock market crash. The state asserted that LaRoche, upon finding his real estate holdings difficult to sell, cleverly embarked upon a tour de force to generate income to pay off his stock market losses by deciding to sell some of his assets and to borrow against others. In the seven counts on which LaRoche was tried, the state alleged that he committed, or conspired to commit, acts of larceny against the Davisville Credit Union (Davisville) and the Rhode Island Central Credit Union (RICCU) in order to obtain his needed funds. The state charged that LaRoche had sought to obtain loans from those

3. One of the indictment's eight counts was dismissed by the trial justice prior to trial as duplicitous because it contained the identical wording of one of the other counts. The jury acquitted the defendant of two of the remaining seven counts. We will discuss these acquittals elsewhere in this opinion.

4. Indeed, during his closing argument to the jury, the state's prosecutor remarked, "In this case as in any case I have ever been involved in there's never been such a diametrically opposed position regarding what happened in this particular case as there exists in this matter between the two [state and defendant counsel] tables."

institutions by means of false pretenses, in each instance utilizing an individual other than himself to actually and formally apply for the loan. The artful token loan applicants were referred to by the state as "straw borrowers." The indictment against La-Roche, when examined, reveals it to involve four separate transactions or schemes perpetrated by him. The state asserted that La-Roche framed each of those four transactions so as to give the impression to the financial institution concerned that the straw borrower was seeking a loan for himself in order to facilitate the straw borrower's purchase of property. The modus operandi for each of the four transactions appears from the state's evidence to have been of a similar nature. We will briefly discuss each of those transactions.

The first and second counts in the indictment alleged that in August 1988 LaRoche obtained, and conspired to obtain, $1.6 million from Davisville by false pretenses. Those counts concerned what was referred to by the parties in this appeal as "the Sherwood property" transaction. The state charged that LaRoche in early 1988 owed one of his business associates, David Brodsky (Brodsky), more than one million dollars. In an attempt to satisfy at least part of that debt, LaRoche offered to sell Brodsky the Sherwood property, which was located in Portsmouth, Rhode Island, at a price well below its market value so that Brodsky could in turn resell the property at a profit. Brodsky did purchase this property, after obtaining a $1.4 million loan from Davisville. Brodsky encountered problems in reselling the Sherwood property, and LaRoche eventually offered to repurchase the real estate from him.

LaRoche, however, could not personally borrow the necessary $1.4 million from Davisville in order to repurchase the Sherwood property because the credit union had established monetary limits above which it could not lend to any one individual. This figure, referred to as a "lending limit," was later explained during the trial by an expert witness testifying for the state.[5] The expert testified that a lending institution calculated its lending limit by first discerning its net worth and then deciding upon a percentage of that net worth that it would then permit a single individual to borrow. In the case of Davisville, the board of directors had decided that it would permit a single borrower to take out a loan of up to 20 percent of the institution's net worth.[6] At the time La-Roche sought money to repurchase the Sherwood property, the lending limit at Davisville was about $1.9 million, and LaRoche's outstanding loans with the credit union amounted to about $1.6 million, which, of course, meant that LaRoche could not personally apply for a loan of $1.4 million to repurchase the Sherwood property from Brodsky. As a result, the state alleged, LaRoche then decided to utilize a "straw borrower" in order to obtain the desired loan, and he offered a friend, P. Alan Ryan (Ryan), $50,000 if he would take out a loan from Davisville for the amount needed to repurchase the Sherwood property. LaRoche discussed that proposed loan with the branch manager at Davisville, Helen Arkwright (Arkwright), and Davisville vice president Wilfred McPeak (McPeak), who both agreed to LaRoche's plan and to permit LaRoche to use Ryan as the named loan applicant. Arkwright and McPeak at that time were loan committee members and recommended the loan's approval to the rest of the loan committee. However, no members of the credit union's board of directors, or any other members of the loan committee were ever apprised of the true nature of the method by which the loan transaction was structured. Consequently, Ryan, whose salary at the time was under $40,000, was able

---

5. The admissibility of the testimony of the state's banking practices expert, Steven Butler, is a subject of the defendant's fifth appellate issue in this case.

6. It is worth our noting at this juncture that at the time LaRoche allegedly committed the acts that were the subject of this trial, credit unions established their own lending limits. The General Assembly has since passed a law that statutorily imposes a maximum amount that a credit union may permit to be borrowed. That amount is either 1 percent of the credit union's total assets or 20 percent of the institution's total unimpaired capital, whichever is greater. *See* G.L.1956 § 19–5–16.

to take out a $1.4 million loan from Davisville.

The third and fourth counts in the indictment charged LaRoche with obtaining, and conspiring to obtain, $238,000 from Davisville in August 1988 by false pretenses. The state alleged that LaRoche in that instance had requested another friend, Bernard Roy Dutra (Dutra), a real estate broker, to apply for the loan with Davisville in order for LaRoche to secure a condominium in Newport as a residence for his paramour. This was referred to as the "Newport condominium" transaction. We need not discuss that transaction any further at this point because the jury acquitted LaRoche on the two counts based on the loan taken for that condominium purchase, but we shall make reference to them later when pertinent in addressing the defendant's severance issue upon which he alleges error by the trial justice.

The indictment's fifth and sixth counts charged LaRoche with obtaining, and conspiring to obtain, $800,000 from Davisville in June 1988 by false pretenses. Those counts alleged that LaRoche had earlier requested Dutra to apply for a loan from Davisville in his own name, and then Dutra ostensibly would use the loan proceeds to purchase from LaRoche "Tower Hill," a piece of property that LaRoche owned in North Kingstown, Rhode Island. The state alleged that the Tower Hill loan transaction was also conducted with the knowledge of certain Davisville officials, those being Arkwright, McPeak, and Davisville president Edward Washburn. However, as was the case involving the Sherwood property deal, no members of Davisville's board of directors or any other members of the credit union's loan committee were ever informed of the true nature of the Tower Hill transaction. Dutra, as the straw borrower, did obtain the needed $800,000 by signing the required promissory note for the loan. Dutra, having been granted immunity, testified at LaRoche's trial. He testified that

he never intended to repay the loan money himself because he had been assured by LaRoche that LaRoche would repay the loan. Dutra further testified that LaRoche had asked him to sign for the loan because LaRoche had reached his lending limit at Davisville.

The final count in the indictment, count 8, charged LaRoche with conspiring to obtain $1,920,000 from RICCU in December 1988 by false pretenses.[7] The basis of this charge was, again, LaRoche's use of a straw borrower, this time his utilization of the brother of P. Alan Ryan, one David Ryan, to apply for a loan with RICCU so that LaRoche could obtain the loaned money by then selling David Ryan a trailer park owned by LaRoche in Richmond, Rhode Island. This we shall refer to as the "Richmond trailer park" transaction. The state charged that the president of RICCU, John Lanfredi (Lanfredi), suggested to LaRoche that he utilize David Ryan to take out the loan because LaRoche was too close to his lending limit at RICCU and that a loan in LaRoche's name could not be approved. The $1,920,000 loan was eventually approved by RICCU's loan committee, however, once again without being informed of the true circumstances surrounding the transaction. David Ryan in fact testified at the trial that he never had any personal interest in owning the Richmond trailer park property, but had taken out the $1,920,000 loan "to help Mr. LaRoche."

## II

### The Judgment of Acquittal Motion

The defendant contends that the trial justice erred in denying his motion for a judgment of acquittal pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure. That rule states in pertinent part:

"The court on motion of a defendant or of its own motion shall order the entry of

---

7. The indictment actually charged the defendant with committing the offense against Davisville. The grand jury voting record revealed that RICCU was the alleged victim of the offense, but the state erred in preparing the indictment and substituted Davisville. The trial justice ruled that since a victim is not an essential element of the crime of obtaining money by false pretenses, *see State v. Markarian*, 551 A.2d 1178, 1181 (R.I. 1988), the naming of Davisville instead of RICCU was "mere surplusage and as such does not warrant dismissal of Count Eight of the indictment." The defendant does not dispute this ruling in his appeal.

judgment of acquittal of one or more offenses charged in the indictment, information, or complaint after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses."

■■■■ We have held that a trial justice, when presented with a motion for judgment of acquittal, "must determine whether the evidence offered by the state is capable of generating proof of guilt beyond a reasonable doubt." *State v. Harnois,* 638 A.2d 532, 536 (R.I.1994) (quoting *State v. Caruolo,* 524 A.2d 575, 580–81 (R.I.1987)). In making that determination, the trial justice is confined in his analysis of the state's evidence to view the trial evidence in the light most favorable to the state, without weighing or evaluating the evidence, or assessing the credibility of the trial witnesses. *State v. Clark,* 603 A.2d 1094, 1097 (R.I.1992). He or she must draw all reasonable inferences from the evidence that are consistent with the defendant's guilt and in favor of the state when passing upon the motion. In addition, the trial justice is required to view only that evidence that the prosecution claims is capable of supporting proof of guilt beyond a reasonable doubt. *State v. Wilshire,* 509 A.2d 444, 452 (R.I. 1986), *cert. denied,* 479 U.S. 1037, 107 S.Ct. 891, 93 L.Ed.2d 843 (1987). If the evidence, when viewed in such a light, is sufficient to warrant a guilty finding by the jury, the trial justice must deny the motion. *See State v. Mattatall,* 603 A.2d 1098, 1105 (R.I.1992); *Clark,* 603 A.2d at 1097–98. This Court applies the same standard on appellate review as that utilized by the trial justice. *State v. Mollicone,* 654 A.2d 311, 319 (R.I.1995); *State v. Henshaw,* 557 A.2d 1204, 1206 (R.I. 1989); *State v. McGranahan,* 415 A.2d 1298, 1301 (R.I.1980).

Accordingly, we shall examine the trial evidence, drawing, as we must, all reasonable inferences that support LaRoche's guilt and, after doing so, determine whether that evidence was capable of supporting a finding of guilt beyond a reasonable doubt. *State v. von Bulow,* 475 A.2d 995, 1020 (R.I.1984).

As we have previously observed, depending upon whose version of the facts and interpretation of the law one adopts in this case, LaRoche may appear as the nimble robber baron of innocent credit unions or as one whose wizardry and business acumen should be lauded for his efforts in attempting to survive financially catastrophic tsunamis caused by stock and real estate market eruptions. Indeed, LaRoche's counsel stated during oral argument that "the heart and soul" of his appellate contentions was that his client had done nothing illegal, and that each of the allegedly criminal transactions was conducted "at arm's length."

However, as we noted earlier, when determining the merit of a defendant's motion for judgment of acquittal, both the trial justice and this Court are bound to examine *only* that evidence that the prosecution claims is capable of supporting proof of guilt beyond a reasonable doubt. *State v. Farlett,* 490 A.2d 52, 57 (R.I.1985). Therefore, the credibility of LaRoche's testimony on his own behalf as well as that of the other defense witnesses is not taken into account as part of our review of the trial justice's decision.

In this case, the state alleged that LaRoche committed larceny by violating the "obtaining property by false pretenses or personation" statute. The statute provides in pertinent part:

"Every person who shall obtain from another designedly, by any false pretense or pretenses, any money, goods, wares, or other property, with intent to cheat or defraud * * * shall be deemed guilty of larceny." General Laws 1956 § 11–41–4.

LaRoche's primary contention on this particular appellate issue is that he never made any false statements to Davisville or RICCU and that the state did not present evidence that he possessed an intent to cheat or defraud the credit unions. The state acknowledges that in this case it was required to prove, (1) that the defendant designedly obtained money from another by any false pretense or pretenses; and (2) that the defendant did so with the intent to cheat or defraud in order to support a conviction under the false pretenses statute. *See Henshaw,* 557 A.2d at 1207.

In his denial of LaRoche's judgment of acquittal motion, the trial justice stated:

"I'm satisfied in all of these transactions there is evidence which would support the fact that Mr. LaRoche, if not the direct recipient of the money, so to speak, was the indirect recipient which was enough to qualify for obtaining money under false pretenses."

The trial justice further remarked that there was ample evidence presented by the state to support a jury's finding that "Mr. LaRoche did in fact either through his own activities or through the activities of an agent falsely represent the beneficiary of these loans," and that if the jury did so find, that evidence could also serve to "prove beyond a reasonable doubt proof of obtaining money under false pretenses with the intent to defraud."

■ We agree. The phrase "intent to defraud" is defined as "an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property." Black's Law Dictionary 423 (6th ed.1990). *See also State v. Aurgemma*, 116 R.I. 425, 358 A.2d 46 (1976); 32 Am.Jur.2d *False Pretenses* § 11 (1995). Viewing the trial evidence in the light most favorable to the state and after drawing all reasonable inferences therefrom that are consistent with the defendant's guilt, we are of the opinion that LaRoche could be found to have intentionally utilized token, or "straw," borrowers in an effort to circumvent the lending limits at Davisville and RICCU, which he had exceeded or nearly exceeded, and that the credit unions' reliance upon his false, willful, and deceptive actions resulted in the transfer by them of their money. LaRoche's exculpatory testimony, explaining his motives and denying any intent to defraud, is not relevant at the time of his motion under our judgment of acquittal standard. *See Henshaw*, 557 A.2d at 1207.

■ LaRoche was also charged with conspiring to violate the above-referenced criminal offense pursuant to G.L.1956 § 11–1–6. "Conspiracy is defined as 'a combination of two or more persons to commit an unlawful act or to perform a lawful act for an unlawful purpose.'" *State v. Smith*, 662 A.2d 1171, 1177 (R.I.1995) (quoting *State v. Mastracchio*, 612 A.2d 698, 706 (R.I.1992)). The agreement itself constitutes the crime, and the conspiracy is committed at the moment the agreement is struck. It is totally immaterial whether the conspiracy agreement succeeds or fails. Once the agreement is made, the offense is complete. *State v. Barton*, 427 A.2d 1311, 1312–13 (R.I.1981). We have also held that "the goals of the conspirators 'may be inferentially established by proof of the relations, conduct, circumstances, and actions of the parties.'" *Smith*, 662 A.2d at 1177 (quoting *State v. Gordon*, 508 A.2d 1339, 1349 (R.I.1986)).

■ Having already opined that the evidence in this case was capable of supporting proof of LaRoche's guilt beyond a reasonable doubt on the false pretenses counts, and in light of the substantial evidence that the defendant acted in concert with his "straw" borrowers in order to deceive the credit unions, we have no difficulty in also adopting the trial justice's belief that LaRoche initiated the loan scheme and enlisted the aid of his straw people, who agreed with him to carry out his schemes. That evidence certainly permitted the trial justice to deny his motion for judgment of acquittal and supported his conspiracy convictions by the jury.

### III

#### The Jury Instructions

LaRoche next argues in this appeal that the trial justice erred by refusing to give certain defense requested instructions to the jury. His contention is comprised of assertions that the trial justice erred by refusing to instruct the jury regarding, (1) a portion of a requested instruction on lending limits; (2) another, that the state prove that LaRoche had to have intended to permanently deprive the credit unions of their loaned moneys; and (3) that LaRoche had to have designedly obtained *only* money, as opposed to the given instruction, which included a one-time reading of the complete wording of the false pretenses statute.

■ When instructing the jury, the trial justice "should reasonably set forth all of the

salient and essential propositions of law that relate to material issues of fact which the evidence tends to support." *State v. Conway*, 463 A.2d 1319, 1322 (R.I.1983) (citing *State v. Manning*, 447 A.2d 393, 394 (R.I. 1982)). In *Conway* we also noted that "[t]he jury's attention should not be directed to various propositions of law unless the record contains evidence which supports and requires it." 463 A.2d at 1322 (quoting *State v. Infantolino*, 116 R.I. 303, 307, 355 A.2d 722, 724–25 (1976)).

██ It is also well-settled law that when we examine a party's challenge to specific jury instructions, we will view the charge as given in its entirety in order to determine its sufficiency and correctness. *State v. Gordon*, 508 A.2d 1339, 1349 (R.I.1986). "We will not examine single sentences. Rather, the challenged portions must be examined in the context in which they were rendered." *Id.*

LaRoche's contentions of error in the trial justice's instruction in this case are without merit. Each of the defense-requested instructions that the trial justice denied would have simply added elements to the crime of obtaining money by false pretenses that were not properly part of the offense.

██ For example, the defendant's contention that the trial justice should have instructed the jury that the state was required to prove an intent by him to permanently deprive the credit unions of their money is not required by the statutory definition of the crime. The clear and unambiguous language of § 11–41–4 reads that a person who "shall obtain from another designedly, by any false pretense or pretenses, any money, goods, wares, or other property, with intent to cheat or defraud * * * shall be deemed guilty of larceny." Nowhere is there a requirement that the person charged have the intent to *permanently* deprive a victim of his or her money or property; "the crime is committed at the moment the victim is fraudulently induced to part with his money or property." *Aurgemma*, 116 R.I. at 429–30, 358 A.2d at 49. It is well-settled law that the words of a statute are accorded their literal and plain meaning unless those words are ambiguous. *Smith*, 662 A.2d at 1175.

██ LaRoche's contention that the trial justice should only have addressed the defendant's alleged design to obtain money and not "any money, goods, wares or other property," as is listed in the statute, is without merit. As the state correctly points out in its brief, the trial justice made but one reference to this noninclusive list and otherwise consistently referred only to the obtaining of money. It was obviously abundantly clear to the reasonable minded members of the jury that listened to the evidence during the three week trial that the allegations specifically directed against the defendant concerned only his obtaining money loans from the credit unions. "In passing on the sufficiency of a trial justice's instruction, we determine how a jury composed of ordinary intelligent lay persons listening to it at the close of trial would have appreciated the instructions as a whole." *State v. Robalewski*, 418 A.2d 817, 821 (R.I.1980).

## IV

### The Motion to Sever Counts

LaRoche further claims on appeal that the trial justice erred in denying his motion to sever the counts of the indictment into more than one trial. We reject, as meritless, that contention.

Rule 8(a) of the Superior Court Rules of Criminal Procedure governs the joinder of offenses against a single defendant. The rule states in pertinent part as follows:

"(a) Joinder of Offenses. Two (2) or more offenses may be charged in the same indictment, information, or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan." *See also State v. Trepanier*, 600 A.2d 1311, 1316 (R.I.1991).

With respect to a trial justice's exercise of discretion when ruling upon a motion to sever counts, we have repeatedly opined "that the exercise of such discretion will not be

disturbed on review absent a clear abuse." *State v. Young,* 414 A.2d 185, 186 (R.I.1980).

In this case the trial justice denied LaRoche's motion to sever the RICCU count from the counts involving Davisville, and also his motion to separate for trial each of the four alleged criminal transactions. We are of the opinion that the allegations against La-Roche were all the same or of a similar character, "inextricably intertwined with the common scheme and design," in that they all concerned his use of a "straw" borrower to circumvent credit union lending limits. *See State v. Hightower,* 661 A.2d 948, 955 (R.I. 1995). Indeed, it would be difficult for us to imagine a scenario in which it would be more fitting to join counts. The scenes and players enmeshed in this drama beckoned to be presented on one stage. The trial justice in this case, on the indictment concerned, clearly did not abuse his discretion in denying the defendant's severance request.

In rejecting LaRoche's severance contention, we do note, however, that in an appropriate circumstance in which various offenses are joined in a single indictment, a defendant may certainly move for severance of some of the indictment counts for the purposes of trial when he is able to show such prejudice as might constitute a denial of his right to a fair trial, pursuant to Rule 14 of the Superior Court Rules of Criminal Procedure. *State v. Lassor,* 555 A.2d 339, 345 (R.I.1989). Rule 14 provides in pertinent part:

> "If it appears that a defendant or the State is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

On review of a trial justice's denial of a defendant's motion to sever counts pursuant to Rule 14, we apply the standard of whether the trial justice abused his or her discretion. *Lassor,* 555 A.2d at 345. We explicated our review of such a motion-to-sever denial in *State v. Whitman,* 431 A.2d 1229 (R.I.1981), where we stated that

> "[i]n the final analysis, the granting or denial of a motion for severance is not a matter of right but one within the sound discretion of the trial justice. * * * The term 'discretion' connotes an action taken in the light of reason as applied to all of the facts and with a view to the rights of all parties to the action while having regard for what is right and equitable under all of the circumstances and the law." *Id.* at 1233.

In this case, we are of the opinion that, in balancing the rights of the defendant as well as those of the state, it would have been unduly onerous for the state and in terms of judicial economy to conduct two, or as many as four, separate LaRoche trials. Experience has proven that juries are able to respond impartially to the trial evidence with the assistance given by instructions from the trial justice. In support of our view, we note that LaRoche's counsel asserted during the hearing on his motion to sever that he was "particularly concerned with Counts Three and Four in this case," because prejudice to LaRoche would necessarily result from the mere fact that the Newport condominium transaction involved the defendant's purchase of a residence for his mistress, and that prejudice would be amplified by the fact that he bought the condominium from former United States Congressman Ferdinand St. Germain. The jury acquitted LaRoche on those two counts. We do not believe that the defendant was prejudiced in this case by the trial justice's refusal to grant a severance of counts, particularly, as just noted, when the trial record reveals that LaRoche was acquitted on the two counts that he deemed to be most prejudicial and damaging to his fair-trial right.

## V

### The Prosecutor's Closing Argument

LaRoche next contends in this appeal that the trial justice erred in refusing to grant his motion to pass the case after his counsel objected to certain remarks made by the prosecutor during closing argument. We find this contention to be without merit.

A motion to pass a case is viewed for all intents and purposes as identical to a motion for a mistrial. *State v. Toole,* 640 A.2d 965, 974 (R.I.1994). The trial justice's decision whether to grant a motion to pass a case made during trial is left to the trial justice's sound discretion, and we will not second-guess and disturb that decision unless we discern that the trial justice has clearly abused his or her discretion and was clearly wrong. *Id.* (citing *State v. Girouard,* 561 A.2d 882 (R.I.1989)). When a party moves to pass a case upon the basis of opposing counsel's argument, the objected-to statement or statements must be assessed to determine whether any prejudice has in fact probably inured to the defendant. *Id.* (citing *State v. Usenia,* 599 A.2d 1026 (R.I.1991)). Even in those instances in which a trial justice determines the existence of probable prejudice, he or she is not then required to grant the motion to pass the case if the trial justice believes that the prejudice is curable and issues a timely and effective instruction to the jury. *Id.*

LaRoche contends here that the prosecutor during final summation made several prejudicial comments concerning the period when many Rhode Island credit unions failed in the late 1980s and early 1990s. One such excerpt of the prosecutor's final argument reveals that the prosecutor remarked to the jury that the case was "about sham transactions. It's about mismanagement in the credit unions." LaRoche's counsel made timely objection, and the trial justice responded by sustaining that objection and told the jury, "It's not about mismanagement in the credit unions. Later on I will instruct you." Shortly thereafter the prosecutor said to the jury, "You put your money in a credit union, you expect the credit union is going to take care of the money." That remark was also objected to, and the trial justice again sustained defense counsel's objection and told the prosecutor, "This case is on seven counts of obtaining money under false pretenses with the intent to deceive and defraud, and stick to that." LaRoche now claims that those closing argument remarks by the state "inflammed [*sic*] this case by trying to draw the credit union crisis into the debate."

LaRoche also cites three other prosecutorial sound bites, one of which refers to "investigating financial crime" and "getting on inside." Another attacked the trial testimony credibility of LaRoche, when the prosecutor remarked that the defendant would "deceive whoever [he had] to" and posed the rhetorical question to the jury, "I don't know if he is going to deceive you. Is he going to sell you [a] Fuller Brush?" Timely objection was made by defense counsel, and the trial justice again admonished the prosecutor by stating, "The Jury's function is to assess credibility and the weight and not to be deceived, and, Counselor, I think that remark is not necessary." We have reviewed the trial record and do not agree with the defendant's prejudice assessment. In fact, that record discloses to us that the prosecutor's argument, in general, could well be viewed as invited response to defense counsel's summation to the jury. In his summation to the jury defense counsel alluded to the credit union financial climate at the time of the defendant's actions in 1988, and defense counsel attempted to wrap his client in a cloak of innocence not woven entirely from the fabric of the trial evidence.

Defense counsel told the jury:
"He was not a desperate man in 1988. You have financial data from him, four sets of balance sheets from him and the Trust, Ladies and Gentlemen. * * * Putting that all aside, if you look at all those financial statements, a person of phenomenal wealth in the beginning of 1988. He was trying to hold on to to [*sic*] his wealth and trying to hold onto his asset structure, and he's candid about it, trying to hold onto Homeowners stock, and he was wrong, but that doesn't make him a criminal."

In this jurisdiction, "[i]t is well settled that a prosecutor is allowed considerable latitude in arguing the state's case as long as he stays within the evidence and the legitimate inferences that may be drawn therefrom." *Conway,* 463 A.2d at 1324. "A determination of whether a challenged remark is prejudicial cannot be decided by a fixed rule of law. * * * The trial justice must evaluate the probable effect of the re-

mark on the outcome of the case by examining it in its factual context. * * * If the challenged comments are totally unsupported by the evidence and tend to enflame the passions of the jury against the defendant, then prejudice clearly inheres." *Id.* Further, we have stated that "[a]ppeals to the jurors' sympathy or emotions are to be rejected because they go beyond the facts of the case and the reasonable inferences to be drawn from such facts." *State v. Mead,* 544 A.2d 1146, 1150 (R.I.1988).

The trial justice stated during a sidebar conference:

"I think some of the [prosecutor's] remarks, I'm not sure if you can characterize them as prejudicial or uncalled for, they could have been omitted, but in this type of trial sometimes attorneys get to become personal. There are two or three areas that he has made some statements that I think are improper, but not enough to grant your Motion, but enough for me to instruct the Jury again as to final arguments and that as to their function of assessing credibility."

The trial justice then, although denying LaRoche's motion to pass, thoroughly and precisely instructed the members of the jury that it was their function to assess witness credibility. He reminded them of the state's burden of proof and of the defendant's presumption of innocence, and specifically, that only the jurors' recollection of the evidence and not the characterization or assessment of that evidence as stated by the attorneys, was to be utilized in reaching a verdict.

 We are satisfied that the trial justice's final instructions to the jury were more than adequate to cure any possible prejudice that may have resulted from the prosecutor's arguably overzealous remarks. We have often held that the members of the jury are presumed to follow the trial justice's instructions. *See State v. Simpson,* 658 A.2d 522, 528 (R.I.1995); *Toole,* 640 A.2d at 974–75; *State v. Vento,* 533 A.2d 1161, 1166 (R.I. 1987). We believe they did so in this case, and we are of the opinion that the trial justice did not abuse his discretion and was not clearly wrong in denying LaRoche's motion to pass the case.

## VI

### The State's Banking Expert

 Finally, LaRoche asserts that the trial justice erred in permitting the testimony of the state's banking-practices expert, Steven Butler (Butler). LaRoche contends that the state violated discovery rules by not informing him of its intention to present Butler as an expert witness until several days before trial. The defendant also argues that he was prejudiced because the state did not provide a summary of the proffered expert's testimony by the first scheduled day of trial. Under Rule 16 of the Superior Court Rules of Criminal Procedure, the state is required to furnish the defendant with a summary of a witness's testimony that it expects will be given at trial. *See* Rule 16(a)(7). LaRoche alleges that the state violated that rule by not furnishing him with a summary of Butler's testimony.

 Although we have noted in the past that the state's failure to provide timely discovery can result in prejudice to a defendant by hindering his or her counsel's defense preparation, *see State v. Simpson,* 595 A.2d 803, 807–08 (R.I.1991), we are of the opinion in this case that LaRoche's contention is without merit. Defense counsel here had extensive previous knowledge of the witness Butler stemming from a case wherein he had been trial counsel a mere few months earlier—*State v. Mollicone,* 654 A.2d 311 (R.I. 1995). In that case Butler had testified as an expert for the state and had been cross-examined by LaRoche's counsel. More importantly, however, in this case, defense counsel did not request a trial continuance, although the trial justice did indicate that he would have granted such a defense request. Instead, defense counsel elected to interview the witness Butler the day before Butler testified. Defense counsel admitted that he himself had "terminated the interview after about an hour. I feel I had gotten as much as I could out of the interview." Defense counsel then specifically advised the trial justice that he was not moving for a trial continuance. Therefore, we are of the opinion that

the state's discovery violation resulted in no prejudice to LaRoche.

The defendant also claims that the trial justice erred in allowing Butler to give certain testimony concerning the credit unions' self-imposed "lending limits," because any testimony elicited from an expert alleging that LaRoche had violated those limits "could confuse the jury into believing that a breach of those standards would be equated with a violation of the criminal law." However, the trial justice, citing Rule 702 of the Rhode Island Rules of Evidence, believed that Butler's "specialized knowledge" in the banking field would assist the jurors as triers of the facts, in their understanding of the evidence and issues in the case. *See, e.g., Mollicone*, 654 A.2d at 323.

■ "It is well-settled law that the qualification of an expert witness and the matters to which he or she may testify are considered to be within the sound discretion of the trial justice." *Owens v. Payless Cashways*, 670 A.2d 1240, 1244 (R.I.1996) (citing *State v. Villani*, 491 A.2d 976, 978 (R.I.1985)). A trial justice's ruling in this area will not be disturbed on appeal absent a showing of clear abuse of his or her discretion. *Owens*, 670 A.2d at 1244. Therefore, although the trial justice in this case did not, at the time of this trial, have the benefit of our *Mollicone* opinion, he ruled in a manner that was totally consistent with this Court's later opinion in that case.

■ LaRoche also alleges that the trial justice's questioning of Butler "highlighted this testimony and gave it undeserved significance." We find this contention to be without merit. The record reveals that although the trial justice did pose questions to several witnesses, including Butler, during the trial, he did so in the meticulous, impartial manner that this Court has held on numerous occasions to be well within the trial justice's purview of discretion. *See State v. McKenna*, 512 A.2d 113 (R.I.1986); Rhode Island Rule of Evidence 614(B).

## VII

### Conclusion

For the reasons herein stated above, the defendant's appeal is denied, the judgment of conviction is affirmed, and the papers of this case are remanded to the Washington County Superior Court.