# STATE

### v.

## Frank FIORENZANO.

### No. 94–420–C.A.

Supreme Court of Rhode Island.

March 5, 1997.

Annie Goldberg and Aaron L. Weisman, Providence, for plaintiff.

John A. MacFadyen, III, Providence, for defendant.

## OPINION

FLANDERS, Justice.

Found "false and perfidious" [1] after a jury-waived trial before a Superior Court justice,

---

1. "There is no vice that doth so cover a man with shame as to be found false and perfidious." Francis Bacon, *Of Truth, in The Essays or Coun-*

the defendant, Frank Fiorenzano, a former state representative and disbarred attorney, appeals from a judgment convicting him of obtaining money by false pretenses. He claims the trial justice committed reversible error in ruling that G.L.1956 § 11–41–4 (the obtaining-money-or-property-by-false-pretenses-or-personation statute) did not require proof that the defendant intended to convert or misappropriate the victim's funds or to deprive the victim of his or her money permanently. The defendant also contends that the trial justice improperly denied his motion to exclude all evidence of events occurring before March 9, 1988, the effective date of the General Assembly's adoption of a ten-year limitations period for § 11–41–4 offenses. The 1988 enactment expressly provides that it applies "to all criminal acts for which the statute of limitations under current law has not yet expired as of" March 9, 1988. P.L.1988, ch. 15, § 2. Notwithstanding that the "current law" provided a three-year limitations period which had not yet expired as of the new law's 1988 enactment date, the defendant claims that the application of the 1988 amendment to his pre-enactment conduct violates the ex post facto clauses of the State and Federal Constitutions.[2] For the reasons explained below, we disagree and uphold the defendant's conviction.

### Facts

The defendant's victim was Albert DelMastro (DelMastro), a retired maintenance worker whose formal education ended after the eighth grade. They first met when defendant was campaigning to be elected as a state representative for the Silver Lake district in Providence. Eventually DelMastro engaged defendant to draft a will for him. In doing so, defendant learned of DelMastro's financial wherewithal. The defendant then induced DelMastro to part with his life savings by representing that he would invest it for him in a way that would yield a higher return than would be possible if DelMastro kept his money on deposit with local banks.

The defendant told DelMastro that he would invest his savings for him through IDS Financial Services, Inc. (IDS), a company that provides various investment products and other financial services. In time, defendant inveigled DelMastro into giving him checks and cash payments totaling over $82,-000, all of which was supposed to be invested with IDS. Moreover, defendant told DelMastro to make the checks payable to himself, to cash them, and then to give the proceeds to defendant because defendant was supposedly having problems cashing checks at his own bank. The defendant insinuated that this method of transferring the money would enable him to avoid the inconvenience of having to show his bank various credentials before it would negotiate DelMastro's checks.[3]

Although DelMastro pressed defendant to obtain for him an investment contract from IDS and to provide him with some other kind of documentation that would confirm his IDS investments, defendant kept putting him off by telling him that these kinds of things take a long time to obtain. At one point defendant cited the Rhode Island banking crisis as one reason why he was unable to provide DelMastro with tangible evidence that his IDS investments had appreciated as handsomely as defendant represented they would.

Finally, in October of 1989, DelMastro told defendant that he would not give him another penny until he came up with some kind of

*sels, Civil and Moral, of Francis Ld. Verulam* 11 (Peter Pauper Press n.d.) (n.d.).

2. U.S. Const. Art. 1, sec. 10; R.I. Const. art. 1, sec. 12. Because "[t]he proviso in each Constitution is almost identical to that in the other," *Lerner v. Gill,* 463 A.2d 1352, 1356 (R.I.1983), our discussion will not discriminate between the clauses.

3. This, of course, was a pretense:
"But all was false and hollow; though his Tongue

"Dropt Manna, and could make the worse appear
"The better reason, to perplex and dash
"Maturest Counsels: for his thoughts were low;
"To vice industrious, but to Nobler deeds
"Timorous and slothful: yet he pleas'd the ear."
John Milton, *Paradise Lost, in Complete Poetry and Selected Prose of John Milton* 117–18 (1942).

proof that his money had in fact been given to IDS for investment on his behalf as defendant had repeatedly represented. When defendant still failed to produce the requested documentation, DelMastro contacted the authorities. Eventually defendant was indicted.

At trial an IDS office administrator testified that IDS had never recorded any investments in DelMastro's name and that neither defendant nor the person that he had identified to DelMastro as his assistant had ever been an investor or employee of IDS. The defendant did not testify at trial and presented no evidence on his behalf.

On these facts the trial justice concluded that defendant was guilty of obtaining money from DelMastro under false pretenses. He found as a fact that for some three years defendant enticed DelMastro to part with a sum in excess of $80,000 by representing to him that he would invest the money through IDS and that this investment would yield far greater returns than could be realized by any bank interest DelMastro could obtain via local savings accounts and certificates of deposit. The trial justice also found that defendant never intended to invest DelMastro's money with IDS or with any other legitimate source and that he had fraudulently induced DelMastro to part with his money. He further noted that defendant did not begin to repay DelMastro in any substantial way until after his misconduct had been discovered and that he did not complete the repayment until virtually the eve of his criminal trial.

We turn now to defendant's arguments on appeal and discuss why they do not persuade us to reverse his conviction.

### Analysis

### I

**An Intention to Convert or to Deprive Permanently Is Not an Element of the Crime of Obtaining Money by False Pretenses**

General Laws 1956 § 11–41–4 provides, in pertinent part, as follows: "Every person who shall obtain from another designedly, by any false pretense or pretenses, any money * * * or other property, with intent to cheat or defraud * * * and shall thereby receive any money * * * shall be deemed guilty of larceny." Thus, as applied to these facts, there are two basic elements for this crime: (1) that the defendant obtain money from another by any false pretense or pretenses and (2) that the defendant obtained the money with the "intent to cheat or defraud." There is no requirement in the plain language of the statute that the defendant intend to convert or to misappropriate funds or to deprive the victim permanently of any money so obtained. Rather, the statute reflects the practical reality that by misrepresenting how an investment will be used, one can still cheat and defraud investors without ever intending to deprive them of their money permanently. Indeed, many scam artists rationalize their actions by claiming that they always intended to repay their victims, usually with a greater return on their investment than even their victims expected. Of course, not only are such intentions of making good seldom realized but they are irrelevant to obtaining money by false pretenses. In this crime, the victim is mulcted and the dastardly deed is done the moment the money is obtained designedly by the defendant for a use other than that represented to the victim.

In *State v. LaRoche,* 683 A.2d 989 (R.I. 1996), we defined the phrase "intent to defraud" as it is used in the false-pretenses statute to mean "an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate [that other person's] * * * right, obligation or power with reference to property." *Id.* at 996 (quoting Black's Law Dictionary 423 (6th ed. 1990)). Conspicuously absent from this definition is any intention on behalf of the defendant to deprive victims permanently of their money or property or to convert it to the defendant's own use. Rather, the crime is complete when the defendant intentionally uses false pretenses to induce another to alter or terminate any of that person's rights or powers concerning the money or property with the intent to cheat or defraud that person.

Here, defendant intentionally induced Del-Mastro to part with his money by luring him with false pretenses to alter his rights and powers vis-à-vis his money. The defendant deceived DelMastro by falsely representing that he would invest DelMastro's money through IDS and thereby secure higher earnings for him than could be obtained at local banks.

Thus the "intent to cheat or defraud" language supplies the mens rea needed to make this conduct a crime. If defendant had innocently or negligently misrepresented what he intended to do with DelMastro's money, there would be no crime of obtaining money by false pretenses because there would be no intent to cheat or defraud. Here, however, the prosecution proved beyond a reasonable doubt that defendant intended to cheat or defraud DelMastro by telling him he would invest his money through IDS when in fact he had no such intention. Accordingly the elements of the crime were satisfied upon DelMastro's transfer of the money to defendant in reliance upon these false representations.

▉ The requisite intent to cheat or defraud can be inferred. See State v. McMahon, 49 R.I. 107, 108, 140 A. 359, 359–60 (1928) (the defendant's intention not to repay notes given to sellers of used cars held to be inferable from the defendant's utter lack of assets, his failure to keep any record of the notes, and other facts surrounding his conduct); see also State v. Corcoran, 652 A.2d 979, 980 (R.I.1995) (elements of false pretenses proven by evidence that the owner of a valuable Oriental rug allowed it to be taken out of his house by the defendant on the basis of the defendant's broken promise to clean and return it the next morning); State v. Considine, 56 R.I. 456, 459–60, 186 A. 676, 677–78 (1936). Moreover, this particular crime "is committed at the moment the victim is fraudulently induced to part with his money or property." State v. Aurgemma, 116 R.I. 425, 429–30, 358 A.2d 46, 49 (1976). There we added that "even proof that a

victim has suffered no loss whatsoever or that the money fraudulently obtained has been repaid will not suffice as a defense." Id. at 430, 358 A.2d at 49. We upheld the finding of the trial court in Aurgemma that the defendant " 'willfully, knowingly and with an intent to defraud, falsely represented his capacity to accomplish the work that he had agreed to do * * * that he had no intention of performing his agreement,' " and that his victim " 'was induced to rely, and did rely, on the representations of the defendant' " in parting with his money. Id. at 428–29, 358 A.2d at 48.

In this case the trial justice specifically stated that he had "absolutely no doubt that the defendant lied to Mr. DelMastro * * * regarding investing his money with IDS or in any other fashion" and that "defendant intentionally deceived Mr. DelMastro and intentionally defrauded him." In short, the trial justice found that defendant obtained money from DelMastro by saying he would invest the funds for him through IDS and that he failed to do so because he in fact "never intended to invest Mr. DelMastro's money with IDS or any other legitimate source."

Accordingly we are persuaded that the trial justice correctly found that both elements of this offense were proven beyond a reasonable doubt and that he was not required to find any intent to convert or to deprive permanently on defendant's part in order for the state to prove its case.

II

**The Prosecution of This Offense Was Not Time Barred, Nor Did It Violate the Constitutional Prohibitions against ex Post Facto Laws**

▉ In 1988 G.L.1956 § 12–12–14 was amended by P.L.1988, ch. 15, § 1 to omit reference to the time periods within which evidence of obtaining property by false pretenses may be introduced.[4] As a result the false-pretenses statute was expressly made

---

4. Before the 1988 Amendment, G.L.1956 § 12–12–14 required the money or property to have been obtained "at any time within three (3) years before the bringing of the indictment * * * or within six (6) months next after the time stated in

the indictment." See State v. Ricci, 533 A.2d 844, 845 n. 4 (R.I.1987). These periods in the old version of § 12–12–14 functioned as the practical equivalent of a statute of limitations. See id. at 848.

applicable "to all criminal acts for which the statute of limitations under current law has not yet expired as of the date of passage, and to all criminal acts occurring on or after the date of passage." P.L.1988, ch. 15, § 2. Because defendant's deception of DelMastro occurred from July 16, 1986, through October 3, 1989, the previous three-year statute of limitations for defendant's pre-enactment offenses had not yet run on the date the 1988 amendment became effective. Nonetheless, defendant claims that the application of this new law to his pre-enactment conduct violates the prohibition against ex post facto laws found in Article 1, section 10, of the United States Constitution and in article 1, section 12, of the Rhode Island Constitution, and establishes a new rule of evidence for the crime of obtaining money or property by false pretenses. We disagree.

When the amendment to § 12–12–14 was enacted on March 9, 1988, the acts by which defendant had obtained money from DelMastro were fully prosecutable under the three-year-limitations period then applicable to this type of charge. *See State v. Ricci,* 533 A.2d 844, 848–49 (R.I.1987) (limiting the proof of certain statutory larceny offenses, including obtaining money by false pretenses, to evidence of acts committed within three years before the bringing of the charges or within six months next succeeding the time stated in the charges). The effect of the 1988 amendment to § 12–12–14 was to extend the limitations period for those acts of obtaining money or property by false pretenses that could still be prosecuted under the old three-year-limitations period. When, as here, a statute of limitations is extended prior to the barring of an action, no violation of the ex post facto clause occurs. *E.g., United States v. Chandler,* 66 F.3d 1460, 1467–68 (8th Cir.1995) ("[t]here was no violation of the *ex post facto* clause either facially or as applied to [the defendant], because the amendment [of the limitations period] occurred prior to the running of the original period"); *People v. Russo,* 439 Mich. 584, 487 N.W.2d 698, 701 (1992) ("[w]ell-settled principles require the conclusion that applying the extended statute of limitations to the then-not-yet-time-barred alleged sexual assaults is not ex post facto");

*cf. Kelly v. Marcantonio,* 678 A.2d 873, 883 (R.I.1996) ("it is permissible for the General Assembly to enlarge an already existing action limitation period that would be applicable to causes of action thereunder not already time-barred"); *Spunt v. Oak Hill Nursing Home, Inc.,* 509 A.2d 463, 465 (R.I. 1986) ("[t]he Legislature's * * * declaration of its intent * * * establishes that the extension of the limitation period was intended to apply to those actions that were neither time barred nor finally adjudicated at the time that the new limitation period went into effect"); *Twomey v. The Carlton House of Providence, Inc.,* 113 R.I. 264, 266, 320 A.2d 98, 99 (1974) ("a legislature may validly enlarge a period of limitations relating to existing causes of action").

We have noted that "the ex post facto clause applies only to laws that work substantive, rather than procedural changes." *Skawinski v. State,* 538 A.2d 1006, 1009 (R.I. 1988). Here, the repeal of the three-year time limit on acts alleged to violate the statute's substantive proscription against obtaining money by false pretenses "did not alter the legal rules of evidence in order to convict [the] defendant, nor did the new provision deprive [the defendant] of any substantial right that was his" before the amendment became effective. *State v. Borges,* 519 A.2d 574, 576–77 (R.I.1986). The same 1986 to 1988 evidence that was introduced to convict the defendant after the statute was amended could have been introduced to convict him before the statute was amended. Thus, as applied to this defendant, the change in the law did not result in any adverse evidentiary impact, nor did it deprive him of any defense that he could have asserted if he had been prosecuted under the pre-amendment law. For these reasons we hold that as applied to this defendant, the retroactive language in Public Laws 1988, ch. 15, § 2 does not violate the ex post facto clauses of the Federal or State Constitutions.

### Conclusion

"Thus, * * * [we] have disposed of this falsehood. But falsehood has a perennial

spring."[5] Accordingly we affirm the judgment convicting the defendant of obtaining money by false pretenses and deny and dismiss his appeal.

5. Edmund Burke, *Speech on American Taxation,* *in 1 The Works of Edmund Burke* 466 (1839).