DECISION
This matter is before the Court for decision on the Defendant's request to grant a Rhode Island Rule of Criminal Procedure 29 motion to dismiss based on the State's failure to establish a prima facie case of the requisite elements of the offense of obtaining money under false pretenses.
The State's complaining witnesses, Maureen Gariepy and Donna M. Scales, testified that they reposed into Defendant's care certain items of furniture for refinishing. Specifically, Mrs. Gariepy, in November of 2002, requested that the Defendant reupholster and refinish a rose-colored wing chair that had belonged to her mother. She furnished the Defendant with a deposit of $950.00 and was to subsequently select a fabric of her choice. Mrs. Scales contracted with the Defendant in January 2002 to refinish a dry sink and a mahogany drop-leaf table, also previously belonging to her mother, who had left her home to enter assisted living. She also provided a deposit to the Defendant which represented half of the eventual cost for the completed work. Both of the alleged victims had conducted business with the Defendant — previous to the events in controversy — to a satisfactory conclusion.
According to Mr. Steven Benisch, a friend of the Defendant's for over thirty years, the Defendant in late 2002 began to experience business difficulties that were not of his own *Page 2 
manufacture. At that time, the Defendant lost his lease on the commercial premises of "Majestic Interiors," a furniture restoration business, located on Broadway in Newport, Rhode Island. Mr. Benisch had actually worked with the Defendant at that location for twelve to thirteen years, commencing in the early 1990's. The Defendant, after the loss of his lease, located a workplace in a Fall River, Massachusetts, mill to which he moved the entire contents of his shop with the expectation he would carry on his craft. The mill, however, according to Mr. Benisch, was an unsuitable venue to properly lacquer and polyurethane the pieces being refinished due to the lack of heat. A resultant pipe burst on the fourth floor of the mill destroyed "almost everything" in the Defendant's possession. Furthermore, the Defendant and the landlord had previous disagreements and the landlord actually locked out the Defendant on several occasions. Mr. Benisch testified that he and the Defendant would try to "sneak in" to the building to do work and to retrieve valuable equipment, such as that used for sewing upholstery.
Mrs. Gariepy's chair, as well as her chosen upholstery fabric, had been water-damaged. According to Mr. Benisch, work had been performed on the chair, including springs, webbing and "8-way hand-tying." In the meantime, Mr. Benisch had numerous conversations with Mrs. Gariepy explaining that he was "trying to mediate" the situation in an effort to "make everyone happy." He testified that he "absolutely explained" to Mrs. Gariepy the occurrences that had befallen the Defendant. The Defendant, himself, was described by Mr. Benisch as upset and stated that "he would love to get [the chair] done for [Mrs. Gariepy]."
Subsequent to the calamity at the Fall River location, the Defendant rented a self-storage unit on Brown's Lane in Middletown, Rhode Island, and moved the bailed items, including Mrs. Gariepy's chair. Unfortunately, the unit was liened in February 2007 and its contents were *Page 3 
purchased at auction by Hiram Beaufort. Mr. Benisch and the Defendant specifically attempted to retrieve Mrs. Gariepy's chair from Mr. Beaufort, but to no avail.
The fate of Mrs. Scales' pieces is unclear except, of course, that they were not retuned to her. Mrs. Scales had previously enjoyed a "positive relationship" with the Defendant commencing in 2001 and 2002 when he did work for her on a breakfront, a secretary, a dining room table and chairs, with which she was "well satisfied." When she encountered the Defendant at a gas station in January 2005, he explained that her furniture was in storage. She testified that his explanation of losing a workplace was "reasonable" and she was "not worried about it" but was "perturbed." On at least two subsequent occasions, the Defendant reiterated to Mrs. Scales that he intended to and wanted to complete the work but was "unable" due to a lack of suitable premises.
The crime of obtaining money under false pretenses is effectuated and, "complete when the defendant intentionally uses false pretenses to induce another to alter or terminate any of that person's rights or powers concerning the money or property with the intent to cheat or defraud that person." State v. Fiorenzano, 690 A.2d 857, 859 (R.I. 1997). "Thus, the `intent to cheat or defraud' language supplies the mens rea needed to make this conduct a crime." Id. at 860.
It is absolutely essential, in order to establish culpability, that the State prove that the Defendant had formulated a criminal intent and acted upon that intent at the time the alleged victims parted with their property.
In this case, the credible evidence not only introduces doubt concerning this mental element, but clearly establishes that at the time the Defendant took bailment of the articles, and at all times thereafter, he intended to and desired to make good on the bargain. He had commenced *Page 4 
work on the furniture and moved it to two subsequent locations after he had lost his lease and after the damage to the Fall River premises.
Very simply, this is a situation where a hard-working professional fell upon hard times which he could not have predicted or anticipated when he took possession of the pieces in question. Clearly, the Defendant is civilly liable to the owners of the furniture for their deposit and for the value of each piece. However, the issue before this Court is whether the Defendant is criminally liable, and for the reasons set forth above he cannot justly be held so liable. Therefore, the Defendant's motion to dismiss the within charges is granted. Attorney for the prevailing party shall submit an Order consistent with this Decision. *Page 1